

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE DEC 1 1 2014
~Pau hunst, Q
for CHIEF JUSTICE

This opinion was filed for record
at 8:00 Arm on Dec. 11, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 89694-1 |
| WILLIAM RICHARD COGGIN, | ) ) ) | |
| Petitioner. | ) ) ) | Filed    DEC 1 1 2014 |

C. JOHNSON, J.—In this case we must decide what standard on review is applicable in a personal restraint petition asserting a violation of the right to a public trial under article I, section 22 of the Washington State Constitution.[1] Here and in *In re Personal Restraint of Speight*, No. 89693-3 (Wash. Dec. 11, 2014), prospective jurors were questioned in chambers without the trial court engaging in the analysis required by *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995). After his convictions were affirmed on appeal, petitioner William Coggin brought this timely personal restraint petition, claiming the private questioning of jurors

---

[1] This case was certified to this court by Division One of the Court of Appeals with *In re Personal Restraint of Speight*, No. 89693-3 (Wash. Dec. 11, 2014). Both cases present the same central issue but were not consolidated. This case provides the in-depth analysis of the common issue, and *Speight* applies the same analysis discussed here.

constituted a closure and raising the issue of whether actual and substantial prejudice must be shown from a public trial right violation in order to obtain relief by personal restraint petition. With the principles of appellate finality in mind, we hold that while Coggin's public trial rights were violated, a petitioner claiming a public trial right violation for the first time on collateral review must show actual and substantial prejudice. Coggin does not show actual and substantial prejudice arising from the closure; therefore, his petition is denied.

## FACTS AND PROCEDURAL HISTORY

On August 23, 2004, William Coggin went to a home in Whatcom County, where he tried to solicit yard work and attempted to sell key chains. Two young sisters were home at the time, and one sister refused both of his offers after opening the door. At the refusal, Coggin pulled out a gun, entered the home, and raped the two sisters. A third sister and the parents arrived home later. Coggin ordered them upstairs at gunpoint, and then he left.

Coggin was charged with first degree burglary, first degree rape, second degree assault, first degree robbery, and first degree unlawful possession of a firearm, with 11 firearm enhancements. During jury selection, defense counsel expressed a desire for individual juror questioning due to the publicity and sensitive nature of the case. The prosecutor drafted a juror questionnaire, and defense counsel approved the final version. The questionnaire advised the potential

2

jurors that if they preferred to discuss their answers in private, the court would give them an opportunity to explain their answers in a "closed hearing." Resp. to Pers. Restraint Pet., App. C at 1. The court and the parties questioned 12 prospective jurors in chambers. Before doing so, the court did not engage in the analysis required by *Bone-Club*. Six prospective jurors were dismissed for cause.

The jury convicted Coggin. Counsel raised no public trial issue on direct appeal, and in an unpublished opinion, the Court of Appeals affirmed all convictions but the assault conviction.[2] Coggin filed a timely personal restraint petition in 2007, arguing that his right to a public trial was violated during jury selection.[3] The petition was stayed multiple times in the Court of Appeals, pending decisions by this court. In December 2013, Division One of the Court of Appeals certified the case to this court.

---

[2] *See State v. Coggin*, noted at 134 Wn. App. 1028 (2006) (vacating the second degree assault conviction because the conviction violated double jeopardy principles).

[3] In his opening brief, Coggin asserts that his article I, section 22 rights to a public trial and the public and press's article I, section 10 rights to a public trial were violated. WASH. CONST. art. I, §§ 10, 22. However, Coggin does not further analyze whether the public's right was violated when the trial court questioned jurors individually. Therefore, we will analyze only the public trial right issue under article I, section 22.

ANALYSIS

1.    Public Trial Right

We must first decide whether the trial court's private questioning of jurors constituted a closure, thereby violating Coggin's public trial rights. A criminal defendant has a right to a public trial as guaranteed by our state and federal constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22 (providing "the accused shall have the right . . . to have a speedy public trial"); *State v. Paumier*, 176 Wn.2d 29, 34, 288 P.3d 1126 (2012). We have repeatedly held that the public trial right applies to jury selection. Specifically, it is well established that the public trial right in voir dire proceedings extends to the questioning of individual prospective jurors. *State v. Wise*, 176 Wn.2d 1, 16-19, 288 P.3d 1113 (2012). The right to a public trial is not absolute; a trial court may close the courtroom so long as it considers the five criteria outlined in *Bone-Club*. Failure to conduct a *Bone-Club* analysis before closing the proceeding is error generally requiring a new trial because voir dire is an inseparable part of trial. *Paumier*, 176 Wn.2d at 35.

Here, the trial court erroneously closed the courtroom when it privately questioned potential jurors during voir dire without first conducting a *Bone-Club* analysis. The State argues that this case is like *State v. Momah*, 167 Wn.2d 140, 151-52, 217 P.3d 321 (2009), where we found no public trial right violation. In that case, we emphasized that the defendant affirmatively assented to the closure of

4

voir dire and actively participated in designing the trial closure. Additionally, while it was not explicit, the trial court in *Momah* effectively considered the *Bone-Club* factors. However, in this case, the trial court did not explicitly or implicitly consider the *Bone-Club* factors or acknowledge that it was closing the courtroom. The State provided the juror questionnaire that offered potential jurors a "closed hearing" and while Coggin approved of the questionnaire, he did not actively participate in designing the trial closure.

The State also argues that Coggin invited any violation of his right to a public trial. "The basic premise of the invited error doctrine is that a party who sets up an error at trial cannot claim that very action as error on appeal and receive a new trial." *Momah*, 167 Wn.2d at 153. In determining whether the invited error doctrine applies, we have considered whether the defendant affirmatively assented to the error, materially contributed to it, or benefited from it. For example, we have held that a party may not request a jury instruction and later complain on appeal that the requested instruction was given. *See City of Seattle v. Patu*, 147 Wn.2d 717, 58 P.3d 273 (2002). In contrast, even with its unique set of facts, we held that *Momah* did not present a classic case of invited error and rejected relief based on invited error. Similarly, here, Coggin's actions do not rise to the level of invited error by merely assenting to the State's juror questionnaire and where it was the

trial judge who decided to question jurors in chambers. Therefore, we conclude Coggin did not invite any violation of his right to a public trial.

### 2. Actual and Substantial Prejudice

The general rule is when a personal restraint petitioner alleges a constitutional violation, the petitioner must establish by a preponderance of the evidence that the constitutional error worked to his actual and substantial prejudice. *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 328, 823 P.2d 492 (1992). In *In re Personal Restraint of Morris*, 176 Wn.2d 157, 166, 288 P.3d 1140 (2012), we recognized an exception to this general rule and held that in that case we would presume prejudice where petitioners allege a public trial right violation by way of an ineffective assistance of appellate counsel claim because "[h]ad Morris's appellate counsel raised this issue on direct appeal, Morris would have received a new trial. . . . No clearer prejudice could be established." Because we decided *Morris* on ineffective assistance of appellate counsel grounds, we did not address whether a meritorious public trial right violation is also presumed prejudicial on collateral review. Based on our cases, we hold no presumption applies in this context.

As we explained in *In re Personal Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014), a petitioner's burden on collateral review has evolved over the course of several decades. We have required petitioners who collaterally attack

their convictions to satisfy a higher burden, recognizing that a personal restraint petition does not substitute for a direct appeal, and different procedural rules have been adopted recognizing this difference. Where a presumption of prejudice is appropriate for direct review in some cases, it may not be appropriate for collateral review. *Stockwell,* 179 Wn.2d at 596-97. Even in those cases where the error would never be harmless on direct review, we have not adopted a categorical rule that would equate per se prejudice on collateral review with per se prejudice on direct review. "We have limited the availability of collateral relief because it undermines the principles of finality of litigation, degrades the prominence of trial, and sometimes deprives society of the right to punish admitted offenders." *St. Pierre,* 118 Wn.2d at 329 (denying relief where issue of defective charging documents was raised for the first time in a personal restraint petition (citing *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 824, 650 P.2d 1103 (1982))).

We have recognized that the principles of finality of litigation generally require that a higher standard be met before a presumption of prejudice attaches on collateral review. The petitioner's burden to establish actual and substantial prejudice in a personal restraint petition is generally relaxed only where the error gives rise to a conclusive presumption of prejudice. *St. Pierre,* 118 Wn.2d at 328. This higher standard on collateral review is met only where, in light of the essential purpose of the constitutional right at issue, a violation of the right would

necessarily prejudice the defendant. *Morris*, 176 Wn.2d at 181-82 (Wiggins, J., dissenting) (citing *St. Pierre*, 118 Wn.2d at 329). For example, a petitioner need not prove harm in addition to that which is inherent in proof of the error itself when a petitioner claims ineffective assistance of counsel and prosecutorial withholding of material exculpatory evidence. *Stockwell*, 179 Wn.2d at 607 (Gordon McCloud, J., concurring). At times, we have applied the exception to the general rule that a petitioner must show actual and substantial prejudice on collateral review, but it is just that—an exception—which must be narrowly recognized and applied, lest the general rule be swallowed by the exception.

Here, the record reflects Coggin cannot establish prejudice by any violation of his public trial right. We have stated, "The public trial right serves to ensure a fair trial, to remind the officers of the court of the importance of their functions, to encourage witnesses to come forward, and to discourage perjury." *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005). None of these goals are necessarily jeopardized here. While a defendant's public trial rights are implicated by in-chambers voir dire, prejudice is not "conclusive," nor can it be presumed on collateral review. This is so because a limited trial closure, in and of itself, does not require reversal where the trial court considers and justifies the closure after applying the *Bone-Club* factors. We cannot therefore say that a defendant will be prejudiced every time there is a closure. Here, the record establishes, Coggin was

8

charged with rape. The trial judge and the parties were concerned with juror impartiality because the case had received significant news coverage and expressed concern that jurors potentially had prior knowledge of the crime. This private questioning perhaps worked to benefit Coggin by protecting his right to a fair trial by an impartial jury. Under these circumstances, requiring a showing of prejudice is consistent with the general rule applicable to personal restraint petitions.

The interests of finality and the process underlying appellate review require us to draw a line at some point. "Although some errors which result in per se prejudice on direct review will also be per se prejudicial on collateral attack, the interests of finality of litigation demand that a higher standard be satisfied in a collateral proceeding." *St. Pierre,* 118 Wn.2d at 329. While, as mentioned above, we have carved out an exception and will presume prejudice for petitioners who allege a public trial right violation by way of an ineffective assistance of appellate counsel claim, we refuse to extend this exception any further.

Also, as stated above, significant policy reasons support why it is appropriate to presume prejudice stemming from a public trial right violation on direct review but not on collateral review. Collateral review is fundamentally different from a direct appeal, and different rules apply on direct review as compared to collateral review. Primarily, the appellate process exists to remedy trial errors even when constitutionally based. But after a conviction becomes final

and a defendant raises a public trial right violation on collateral review, the social costs from reopening the case and retrying it are much greater. The appellate process also exists to develop the body of law governing all cases; collateral review focuses on the facts of the individual defendant, and its purpose is to correct the most egregious errors that cause actual harm. The principles of finality outweigh any public trial rights when the petitioner raises the public trial right issue for the first time on collateral review.

Here, Coggin does not argue or establish that he was actually and substantially prejudiced, nor do the facts support that conclusion. As a result of the individual questioning of jurors, Coggin's goal was to benefit from a more fair trial, as jurors were presumably more forthcoming about their relative experiences and their abilities to serve impartially on the jury. While it is difficult to show that a public trial right violation was prejudicial, it is not impossible in every case. Under our established rules, it is the petitioner's burden on collateral review, which Coggin has not established.

CONCLUSION

The petition is denied.

WE CONCUR:

No. 89694-1

MADSEN, C.J. (concurring)—The lead opinion holds that petitioners must show actual and substantial prejudice when raising a public trial right violation for the first time on collateral review. Lead opinion at 2. I agree with the lead opinion's decision to deny William Coggin's personal restraint petition. However, I would instead hold that Coggin invited the courtroom closure during voir dire and accordingly is precluded from raising the issue on collateral review. Thus, we need not reach the question of actual and substantial prejudice.

Nevertheless, because guidance is needed I would agree with the majority that the error here, failure to engage in the analysis outlined in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995), requires a petitioner in a personal restraint petition to prove prejudice unless he can demonstrate that the error in his case "'infect[ed] the entire trial process'" and deprive the defendant of "'basic protections,'" without which "'no criminal punishment may be regarded as fundamentally fair.'" *Neder v. United States*, 527 U.S. 1, 8-9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (quoting *Brecht v. Abrahamson*, 507 U.S.

619, 630, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993); *Rose v. Clark*, 478 U.S. 570, 577, 578, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986)).

## DISCUSSION

We engage in a three step inquiry to analyze public trial right violations, considering whether the public trial right is implicated, whether there was a closure, and whether any such closure was justified. *State v. Smith*, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014) (quoting *State v. Sublett*, 176 Wn.2d 58, 92, 292 P.3d 715 (2012) (Madsen, C.J., concurring)). But a party is precluded from raising a public trial right challenge, and thus we do not begin this three step inquiry, where the party invited the error or waived his or her public trial rights. *See State v. Wise*, 176 Wn.2d 1, 15 & n.8, 288 P.3d 1113 (2012) (recognizing the application of invited error and waiver to public trial rights). Here, Coggin invited the error created by the questioning of 12 jurors in chambers and so, in my view, the analysis ends there.

The goal of the invited error doctrine is to prevent a party from "'setting up an error at trial and then complaining of it on appeal.'" *City of Seattle v. Patu*, 147 Wn.2d 717, 720, 58 P.3d 273 (2002) (quoting *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 893 P.2d 629 (1995)). The mere failure to object is not sufficient to invite an error. *State v. Strode*, 167 Wn.2d 222, 229, 217 P.3d 310 (2009). Instead, looking to the totality of the circumstances, we consider whether the party engaged in affirmative and voluntary action to induce or contribute to the error and whether he or she benefited from the trial court's

2

action. Constitutional error may be invited. In fact, this court has recognized the applicability of the doctrine to public trial rights cases. *See Wise*, 176 Wn.2d at 15 n.8; *State v. Momah*, 167 Wn.2d 140, 153-55, 217 P.3d 321 (2009). Moreover, the doctrine applies equally on direct and collateral appeal. *See, e.g., In re Pers. Restraint of Tortorelli*, 149 Wn.2d 82, 94, 66 P.3d 606 (2003) (applying the invited error doctrine to collateral review of an instructional error). Accordingly, the invited error doctrine is germane here.

In the voir dire context, the key inquiry with invited error is whether the defendant "actively participated" in the closure. *Wise*, 176 Wn.2d at 15 n.8; *Momah*, 167 Wn.2d at 153-55. In *Momah*, this court used invited error principles to fashion a remedy appropriate to the violation. 167 Wn.2d at 154. We reasoned that Momah had the opportunity to object to in-chambers voir dire, but instead made the "deliberate choice" to pursue this option for tactical reasons, and "affirmatively assented to, participated in, and even argued for the expansion of in-chambers questioning." *Id.* at 155. In *Wise*, we affirmed the potential applicability of the invited error doctrine to an in-chambers voir dire error but reasoned that the defendant there did not "actively participate[]" in the closure in the way that Momah did. 176 Wn.2d at 15 n.8.

The facts of Coggin's case are similar to those of *Momah* and dissimilar from *Wise*. In *Wise*, 10 jurors were questioned privately in the judge's chambers during voir dire, compared to the 12 who were questioned privately during Coggin's trial. *Id.* at 7. However, the factors motivating the decision to privately question the jurors were quite

3

different. In *Wise*, the trial judge suggested questioning jurors in chambers, communicated directly with the jurors about that proposal, and orchestrated the entire process. *Id.* Defense counsel may have ultimately acquiesced to the private questioning but played no part in generating or executing the process. In contrast, in Coggin's case it was defense counsel who expressed concern that pretrial publicity may have impacted certain venire members, that some may have trouble answering questions about the sensitive topic of rape, and that some may taint the remaining venire members with their testimony. The prosecutor then drafted a questionnaire that addressed these concerns by giving jurors the option to answer questions privately in a "closed hearing." After suggesting one change, defense counsel approved this questionnaire. Defense counsel then actively participated in the questioning process in chambers and never voiced any objection to the procedure.

In contrast to *Wise*, defense counsel here clearly "actively participated" in the concerns that motivated the in-chambers questioning, the drafting of the questionnaire to include provision for a "closed hearing," and the questioning that later occurred. The totality of the circumstances suggest that the in-chambers questioning of jurors was in line with defense counsel's hopes and expectations for preventing a jury tainted with pretrial publicity, marred by graphic stories from the personal lives of other venire members, or harboring past experience with sexual assault.

Accordingly, I would hold that Coggin invited the voir dire error by advocating for private questioning, engaging in the drafting of the questionnaire that promised private

questioning, and actively participating in the in-chambers questioning that occurred. For

this reason, I concur in the lead opinion's decision to deny Coggin's petition.

Madsen, C.J.

No. 89694-1

STEPHENS, J. (dissenting)—"One of the demands of a democratic society is that the public should know what goes on in courts . . . to the end that the public may judge whether our system of criminal justice is fair and right." *Maryland v. Baltimore Radio Show, Inc.*, 338 U.S. 912, 920, 70 S. Ct. 252, 94 L. Ed. 562 (1950). Voir dire is a critical part of the court process, and how parties and judges treat it is a matter of substantial public concern. *E.g., Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986) (recognizing peremptory challenges occupy important position in trials and cannot be exercised based on race discrimination); *Taylor v. Louisiana*, 419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975) (holding discrimination against women on juries impermissible). We should protect the public trial right by acknowledging that an uninvited, unwaived violation of this important right is always inherently prejudicial.

The lead opinion misapprehends the nature of the public trial right by applying a harmless error analysis to this structural error. Structural errors such as public trial violations defy harmless error analysis because their impact may be impossible to

gauge in a particular case, yet they intangibly harm the framework in which trials operate. This fact is no less true on collateral review than on direct appeal. Because the lead opinion requires personal restraint petitioners to prove the impossible, and because its holding erodes the promise of open justice in our courts, I respectfully dissent.

The lead opinion begins with the unremarkable proposition that a personal restraint petitioner must prove substantial and actual prejudice by a preponderance of the evidence in order to obtain relief. Lead opinion at 6 (citing *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 328, 823 P.2d 492 (1992)). But from this premise it then mistakenly describes our decision in *In re Personal Restraint of Morris*, 176 Wn.2d 157, 166, 288 P.3d 1140 (2012), as recognizing an "exception" to this general rule. Lead opinion at 6. In fact, the court in *Morris* required the petitioner to demonstrate prejudice in order to establish his claim of ineffective assistance of counsel, but held that the structural nature of the public trial right violation conclusively established prejudice. 176 Wn.2d at 166. We said:

> Here, there is little question that the second prong of this test [prejudice] is met. In [*State v.*] *Wise*[, 176 Wn.2d 1, 288 P.3d 1113 (2012)] and [*State v.*] *Paumier*, [176 Wn.2d 29, 288 P.3d 1126 (2012)] we clearly state that a trial court's in-chambers questioning of potential jurors is structural error. Had Morris's appellate counsel raised this issue on direct appeal, Morris would have received a new trial. *See* [*In re Pers. Restraint of*] *Orange*, 152 Wn.2d [795,] 814[, 100 P.3d 291 (2004)] (finding prejudice where appellate counsel failed to raise a courtroom closure issue that would have been presumptively prejudicial error on direct appeal). *No clearer prejudice could be established.*

*Id.* (emphasis added). Our holding in *Morris* followed the steady progression of precedent since *State v. Bone-Club*, in which we stated that "[p]rejudice is presumed

-2-

where a violation of the public trial right occurs." 128 Wn.2d 254, 261-62, 906 P.2d 325 (1995) (citing *State v. Marsh*, 126 Wash. 142, 146-47, 217 P. 705 (1923); *Waller v. Georgia*, 467 U.S. 39, 49 & n.9, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984)).[1]

In our first case to consider a public trial violation on collateral review, we recognized that a showing of prejudice was met—not excused—by the structural nature of the error. *Orange*, 152 Wn.2d at 814 (holding public trial error is "presumptively prejudicial," so that appellate counsel's failure to raise issue on appeal "was both deficient and prejudicial"). We reiterated this point in *Morris*. *See* 176 Wn.2d at 166. Our most recent decisions confirm this truth: the prejudice from a public trial violation inheres in the error. *See State v. Frawley*, 181 Wn.2d 452, 459, 334 P.3d 1022 (2014) (C. Johnson, J., lead opinion) ("Closure of the courtroom without [a *Bone-Club*] analysis is a structural error for which a new trial is the only remedy."); *State v. Njonge*, 181 Wn.2d 546, 554, 334 P.3d 1068 (2014) ("A violation

---

[1] Though the court in *Bone-Club* described prejudice as "presumed," the thread of its analysis makes clear the point that actual prejudice inheres in a public trial violation. *Marsh* adopted the reasoning in a case from the Supreme Court of Michigan, according to which both the defendant and ""'the whole body politic suffers an actual injury when a constitutional safeguard erected to protect the rights of citizens has been violated.'"" 126 Wash. at 147 (quoting *People v. Yeager*, 113 Mich. 228, 230, 71 N.W. 491 (1897) (quoting *People v. Murray*, 89 Mich. 276, 290, 50 N.W. 995 (1891))). *Waller* adopted the reasoning of several state and lower federal cases, which held that defendants need not demonstrate specific prejudice on appeal for a public trial right violation because actual prejudice is difficult to prove in that context and diminishes "'the great, though intangible, societal loss that flows' from closing the courthouse doors." 467 U.S. at 49 n.9 (quoting *People v. Jones*, 47 N.Y.2d 409, 416, 418 N.Y.S.2d 359, 391 N.E.2d 1335 (1979)).

of the public trial right is structural, meaning prejudice is per se presumed to inhere in the violation."); *State v. Shearer*, ___ Wn.2d ___, 334 P.3d 1078, 1082 (2014) (Owens, J., lead opinion) ("[C]losing part of a trial to the public without considering the *Bone-Club* factors . . . is structural error presumed to be prejudicial."); *State v. Slert*, ___ Wn.2d ___, 334 P.3d 1088, 1091 (2014) ("'A public trial is a core safeguard in our system of justice,' and violations of article I, section 10 [of the state constitution] are structural error and can be raised for the first time on appeal." (quoting *Wise*, 176 Wn.2d at 5)). We are not free to disregard the core of our public trial jurisprudence simply because this case arises in a somewhat different posture from our prior cases. The lead opinion misframes the issue when it cautions that we should not relax the burden to show prejudice in a personal restraint petition, "lest the general rule be swallowed by the exception." Lead opinion at 8. This case is not about finding some exception to personal restraint petition standards, but about recognizing that prejudice always flows from this structural error—as we have said time and again.

Public trial violations are structural for two main reasons. First, an unjustified closure taints the entire framework in which the trial operates. *Wise*, 176 Wn.2d at 6 ("the error affects the framework within which the trial proceeds"), 14 ("Where there is structural error "'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be

regarded as fundamentally fair.'"'" (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (quoting *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986))); *see Paumier*, 176 Wn.2d at 35 ("privately question[ing] potential jurors during voir dire without first conducting a *Bone-Club* analysis . . . is structural [error] and warrants a new trial just as it did in *Wise*"). Second, it is impossible to gauge the prejudice of an unjustified closure. *Wise*, 176 Wn.2d at 19 ("Because it is impossible to show whether the structural error of deprivation of the public trial right is prejudicial, we will not require Wise to show prejudice in his case. 'We will not ask defendants to do what the Supreme Court has said is impossible.'" (quoting *Owens v. United States*, 483 F.3d 48, 65 (1st Cir. 2007))); *Waller*, 467 U.S. at 49 n.9 ("a requirement that prejudice be shown 'would in most cases deprive [the defendant] of the [public-trial] guarantee, for it would be difficult to envisage a case in which he would have evidence available of specific injury'" (alterations in original) (quoting *United States ex rel. Bennett v. Rundle*, 419 F.2d 599, 608 (1969)); "'Because the demonstration of prejudice in this kind of case is a practical impossibility, prejudice must necessarily be implied.'" (quoting *State v. Sheppard*, 182 Conn. 412, 418, 438 A.2d 125 (1980))); *see also Presley v. Georgia*, 558 U.S. 209, 216, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010) (granting relief without requiring petitioner to show prejudice because the trial court excluded the public from voir dire in violation of petitioner's right to a public trial under the Sixth and Fourteenth Amendments to the United States Constitution).

The structural nature of public trial error establishes the inextricable link between proof of the error and proof of prejudice. Consistent with our precedent, the United States Supreme Court recognized in *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006), that where a person suffers a structural constitutional error, "[n]o additional showing of prejudice is required to make the violation 'complete.'" (Addressing violation of Sixth Amendment right to chosen counsel.) A structural error is unlike a trial error that concerns the "presentation of the case to the jury" and can be "quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante*, 499 U.S. at 307-08. Analyzing the prejudice from a structural error would force the court to make a "speculative inquiry into what might have occurred in an alternate universe." *Gonzalez-Lopez*, 548 U.S. at 150. "It is impossible to know what difference choices . . . would have [been] made [in the absence of the structural error], and then to quantify the impact of those different choices on the outcome of the proceedings." *Id.*

Having recognized that violation of a criminal defendant's public trial right constitutes structural error, the lead opinion should recognize this error, like all structural errors, warrants reversal of the conviction. Instead, it seeks out reasons why the procedural posture of this case makes all the difference to the outcome. First, it looks to the greater interest in finality upon collateral review to justify requiring a showing of prejudice here. Lead opinion at 7, 9. It asserts, without any

analysis, that "[t]he principles of finality outweigh any public trial rights when the petitioner raises the public trial right issue for the first time on collateral review." *Id.* at 10. Why? What value does a final judgment hold when it follows a proceeding we must recognize as unconstitutional? How is society's interest in knowing that its punishments are meted out justly less important in this context? Moreover, how do the relative interests weigh differently simply because a personal restraint petitioner alleges ineffective assistance of appellate counsel for failing to raise a public trial violation (as in *Orange* and *Morris*) as opposed to a direct public trial violation?[2] Ultimately, it is this court's responsibility to safeguard the openness of court proceedings in this state, and the security of that societal interest should not depend on the pleading decisions—or mistakes—of those whose trials were marred by structural error. While the costs of retrial are high, we have always held that a single public trial right violation is worth that cost. *Orange*, 152 Wn.2d at 800.

The lead opinion acknowledges that the interest in finality must be weighed against the countervailing interest in securing the "essential purpose of the constitutional right at issue." Lead opinion at 7. Though the public trial right serves many purposes, its essential purpose is

---

[2] For the interests to weigh differently in this collateral review than in *Orange* and *Morris*, the lead opinion must believe that the right to effective assistance of counsel deserves greater protection than the right to a public trial. But, there is no authority for this proposition, especially given that deprivation of the public trial right falls within the "'very limited class of cases'" constituting structural error. *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (quoting *Johnson v. United States*, 520 U.S. 461, 468, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997) and citing *Waller*, 467 U.S. 39).

> to ensure a fair trial, to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions, to encourage witnesses to come forward, and to discourage perjury.

*State v. Sublett*, 176 Wn.2d 58, 72, 292 P.3d 715 (2012) (citing *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005)); lead opinion at 8. The "public trial [right] helps assure that the trial is fair; it allows the public to see justice done, and it serves to hold the justice system accountable." *Wise*, 176 Wn.2d at 17 (citing *Waller*, 467 U.S. at 46). The lead opinion hypothesizes that in light of the closure of the voir dire in this case and in the companion case, the defendants probably received "more fair" trials. Lead opinion at 10 ("Coggin's goal was to benefit from a more fair trial, as jurors were presumably more forthcoming about their relative experiences and their abilities to serve impartially on the jury."); *see also In re Pers. Restraint of Speight*, No. 89693-3, slip op. at 6 (Wash. Dec. 11, 2014) ("As a result of the individual questioning, [Speight] likely received a more fair trial and an impartial jury.") Of course, neither defendant submitted evidence regarding the effect of closed voir dire, so the lead opinion's assumptions find no support in the record.

More importantly, the premise that closed voir dire generally ensures fairer trials flatly contradicts United States Supreme Court authority. In *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 503, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984), the State argued that voir dire was properly closed in a rape/murder trial because "if the press were present, juror responses would lack the candor necessary to assure a

fair trial." The Supreme Court explicitly rejected that argument, as well as the implication that "openness" is necessarily opposed to "fairness":

> No right ranks higher than the right of the accused to a fair trial. But the primacy of the accused's right is difficult to separate from the right of everyone in the community to attend the *voir dire* which promotes fairness.
> . . . The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.

*Id.* at 508. By speculating that closed voir dire likely benefitted Coggin and Speight, the lead opinion fundamentally misunderstands the right at issue. It is not for this court to determine whether openness or closure best ensures juror candor—the framers of the Sixth Amendment and article I, section 22 of the state constitution have already done so. The constitutional choice is in favor of openness: Tolerating any public trial right "deprivations would erode our open, public system of justice and could ultimately result in unjust and secret trial proceedings." *Wise*, 176 Wn.2d at 18.

The lead opinion says that "a limited trial closure, in and of itself, does not require reversal where the trial court considers and justifies the closure after applying the *Bone-Club* factors." Lead opinion at 8. Thus, it concludes, "[w]e cannot therefore say that a defendant will be prejudiced every time there is a closure." *Id.* This misses the point. A *justified* closure does not constitute a public trial violation. *State v. Smith*, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014). In contrast, every public

trial *violation* undermines the essential purposes of the public trial right because the right hinges upon the openness of the process. As the lead opinion acknowledges, this case presents not a justified closure, but a public trial right violation. Lead opinion at 2. Having established a violation, the petitioner need not establish additional prejudice.[3]

This court has previously given relief to personal restraint petitioners who alleged public trial right violations for the first time on collateral review, recognizing that the nature of the error demands relief on a claim of ineffective assistance of appellate counsel. *Orange*, 152 Wn.2d at 800 ("Although a new trial will undoubtedly place on the affected community an extremely difficult burden, a burden that will be particularly painful for the families and friends of the victims of

---

[3] The additional prejudice inquiry the lead opinion would require is nothing other than a post-hoc *Bone-Club* analysis. Notwithstanding our consistent refusal to engage in such analysis, the lead opinion would require courts to make an after-the-fact determination whether a closure "perhaps worked to benefit" the personal restraint petitioner, lead opinion at 9, or gave him "a more fair trial, as jurors were presumably more forthcoming." *Id.* at 10. We made clear in *Wise* that such inquiry is flatly inconsistent with the structural nature of public trial error.

> [W]e cannot know what the jurors might have said differently if questioned in the courtroom; what members of the public might have contributed to either the State's or defense's jury selection strategy; or, if the judge had properly closed the court under a *Bone-Club* analysis, what objections, considerations, or alternatives might have resulted and yielded. *Cf. United States v. Curbelo*, 343 F.3d 273, 281 (4th Cir. 2003) ("Like other structural errors, the error here has repercussions that are 'necessarily unquantifiable and indeterminate.' *Sullivan* [*v. Louisiana*, 508 U.S. 275, 282, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993)]. We simply cannot know what [e]ffect a twelfth juror might have had on jury deliberations. Attempting to determine this would involve pure speculation.").

*Wise*, 176 Wn.2d at 18-19 (alterations in original).

crimes charged in this case, our duty under the constitution is to ensure that, absent a closure order narrowly drawn to protect a clearly identified compelling interest, a trial court may not exclude the public or press from any stage of a criminal trial."); *see Morris*, 176 Wn.2d at 173 (finding violation of the public trial right and granting relief on the basis of ineffective assistance of appellate counsel). While the lead opinion distinguishes these cases because they included allegations of ineffective assistance of counsel, this distinction cannot withstand scrutiny. *Orange* and *Morris* held that the prejudice required to prove ineffective assistance of counsel was established by the structural nature of the public trial error. *See Orange*, 152 Wn.2d at 814; *Morris*, 176 Wn.2d at 166. Public trial error is no less structural when it is raised directly rather than through a claim of ineffective assistance of appellate counsel. The petitioner stands in no different position. He is no more capable of showing the type of prejudice the lead opinion would demand than were the petitioners in *Orange* and *Morris*, nor for that matter than the defendants whose counsel raised public trial error on direct appeal. The constitutional deprivation is the same in every case. The remedy should be the same.

Importantly, recognizing the per se prejudice of public trial right violations alleged on collateral review does not open the floodgates to personal restraint petitions. Collateral relief remains available to only a finite number of petitioners. The one-year time bar stands as a formidable obstacle to many late-recognized claims. RCW 10.73.090. To my knowledge, the public trial right has never been used to grant a personal restraint petition under any of the exceptions in RCW

10.73.100. Thus, the "problem" the lead opinion imagines will result from granting relief on collateral review is overstated, while the cost of its "solution" cannot be. Its holding disregards the essential purpose of the public trial right and departs from the steady path of our precedent since *Bone-Club*.

For these reasons, I respectfully dissent.

_____
Stephens, J.

Gordon McCloud, J.

Owens, J.

Fairhurst, J.