IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of<br>DERRIUS FORCHA-WILLIAMS,<br><br>Petitioner. | No. 79041-2-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

COBURN, J. — A jury convicted Derrius Forcha-Williams of committing rape in the second degree when he was 16 years old. The trial court imposed an indeterminate sentence under RCW 9.94A.507 with a midrange sentence of 120 months as the minimum term and life in prison as the maximum term. Forcha-Williams filed a personal restraint petition (PRP)[1] challenging his sentence and arguing the court's decision actually and substantially prejudiced him because it failed to acknowledge its discretion to impose an exceptional sentence in light of any consideration of the mitigating qualities of his youth. This PRP presents an issue of first impression: whether article I, section 14 of the Washington Constitution confers on sentencing courts the discretion to impose a determinate sentence for a crime subject to an indeterminate sentence under RCW 9.94A.507. We conclude it does.

---

[1] Forcha-Williams initially filed a "motion for relief from judgment and to set show cause hearing" in the King County Superior Court. That court transferred the motion to us for consideration as a PRP pursuant to CrR 7.8(c)(2).

Citations and pin cites are based on the Westlaw online version of the cited material.

Although the sentencing court here considered the mitigating qualities of Forcha-Williams's youth, the court understandably but mistakenly assumed, despite mitigating qualities of youth, it had to follow the Sentencing Reform Act (SRA) and impose an indeterminate sentence with a maximum term of life. We grant Forcha-Williams's petition and remand for resentencing.

FACTS

Under RCW 9.94A.507(1) and (3)(b), nonpersistent offenders convicted of rape in the second degree must be sentenced to an indeterminate sentence of the maximum statutory sentence for the offense and a minimum term within the standard sentence range for the offense. Rape in the second degree is a class A felony and the maximum sentence is life in prison. RCW 9A.44.050(2); RCW 9A.20.021(1)(a).

In 2015, a jury convicted Forcha-Williams of committing rape in the second degree when he was 16 years old. Forcha-Williams committed the rape while in a juvenile drug diversion program (drug court).

At the sentencing hearing, the King County Superior Court explained, "In anticipation of this hearing, I did review the state's presentence report, the DOC presentence investigation as well as the defense presentence report."[2]

The DOC presentence investigation detailed Forcha-Williams's childhood struggles including his frequent suspensions starting in third grade and his

---

[2] DOC is the Department of Corrections. The DOC presentence investigation is the only presentence report in the record on appeal.

ultimate expulsion from high school.  It described Forcha-Williams's biological mother as mostly absent from his life, in and out of the criminal justice system, and struggling with substance use.  It also described his stepmother as physically abusive and his father as struggling with substance use.

During the hearing, the victim said she did not want the court to sentence Forcha-Williams to life in prison because of his young age and the opportunity for him to learn from his mistakes.  Defense counsel described Forcha-Williams's youthfulness and difficult childhood including "issues of homelessness, parents with problems with the criminal justice system, [and] some really chilling physical and psychological abuse."  Defense counsel asked the court to consider the context of Forcha-Williams's adolescent development when it considered his decision-making.

Forcha-Williams's juvenile probation counselor spoke on his behalf.  The counselor said Forcha-Williams "is a young man with much promise."  The counselor asked the court to consider Forcha-Williams's age and lack of adult supervision.

The intensive case management mentor who conducted Forcha-Wililams's drug court intake also spoke on his behalf.  The mentor spoke about Forcha-Williams's childhood trauma and prospects for rehabilitation stating, "He is very open to treatment. He was very open to drug court. He's very open to help."  The mentor urged the court to find Forcha-Williams redeemable: "As you

impose the sentence, I really beg of you to understand that this child is redeemable. He is redeemable."

The State informed the trial court that Forcha-Williams had to be sentenced to an indeterminate sentence with the maximum term of life and the minimum term falling within his standard sentencing range of 102 to 136 months. The State recommended a minimum term of 136 months to life in prison. Defense counsel requested the low end of the range, 102 months, and did not request an exceptional sentence or suggest that the court had the discretion to sentence Forcha-Williams to a determinate, rather than an indeterminate, sentence.

The court stated,

> Mr. Forcha-Williams, I have . . . thought a lot about your case, sir. It is incredibly indicative of what happens when kids step out of schooling. I see it time and time again.
> You are a young man. You had a lot of support systems around you at the time that -- things were really going down -- expulsion, substance use -- and all of those things are considerations, but ultimately I think in the course of time that this case has pended, and in the course of the trial, you learned a lot more about the consequences of what your actions can do.
> I will never know if at the time this happened you thought for a second about what the consequences or results could have been, but that doesn't change the fact that it happened. It just doesn't.
> I know that the juvenile system is very different than the adult system -- little discretion, available remedies. And so I want you to understand, and I have no doubt in my mind that Mr. Jursek has explained this to you a lot, but as your sentencing judge, the legislature has passed the Sentencing Reform Act.
> What the legislature has done is it tells me what range I have. It tells me what I can do.
> I understand that a lot of people think that sentencing is where judges have the most discretion, but I am fairly certain your counsel probably told you about ranges and how in particular with

4

this type of charge it is a life sentence. There is nothing I can do that changes that.

What I do today is set the minimum amount of time that you will serve.

After that, the indeterminate review board decides when you get released.

I have no control over the indeterminate review board. No one in this room does. It is ultimately their decision.

I am encouraged that you do wish to pursue your GED in prison and that you're willing to follow my orders about what you are to do when you are in custody.

I am particularly mindful of [the victim's] comments. Not everyone that comes before this court who is a victim of a crime has anything hopeful to say about the defendant. And she did.

You should think about that, about what that takes to not want someone who has hurt you to be locked away forever. What that takes as a person. And that is something that I hope, as you think about that, you strive to do as well.

You are a young man and I truly hope that you make the best use of your time and become a fully functional member of society, but you have a lot of growth to do.

The court imposed the midrange sentence of 120 months to life in prison.

The court further stated,

I . . . particularly noticed in your presentence report, Mr. Forcha-Williams, that you're willing to follow this court's order, and that's a good start as to what you should be doing in custody, but checking the box isn't enough.

[. . .]

It's not easy. I think as you sit here you have seen how not easy it is to go from being a teenager to an adult, from being a kid to an adult. We treat them very differently, don't we?

Forcha-Williams directly appealed his conviction. We affirmed, and his judgement and sentence became final in June 2017.

More than one year later, in July 2018, Forcha-Williams filed a PRP challenging his judgment and sentence. RCW 10.73.090 does not bar the PRP as a collateral attack because the Washington Supreme Court announced a significant and material change in the law that applies retroactively to Forcha-

5

Williams. See State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017);

RCW 10.73.100(6).[3]

In Houston-Sconiers, the Supreme Court held that "[b]ecause 'children are different' under the Eighth Amendment," sentencing "courts must consider mitigating qualities of youth at sentencing *and* must have discretion to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements." 188 Wn.2d at 9, 18, 21 (emphasis added) (quoting Miller v. Alabama, 567 U.S. 460, 481, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)). Our Supreme Court's decisions in In re Pers. Restraint of Ali, 196 Wn.2d 220, 233-35, 474 P.3d 507 (2020) and In re Pers. Restraint of Domingo-Cornelio, 196 Wn.2d 255, 262, 474 P.3d 524 (2020) provide that Houston-Sconiers is a significant and material change in the law that requires retroactive application on collateral review of "adult standard range sentences as well as mandatory enhancements under the SRA imposed for crimes committed while the defendant was a child." Ali, 196 Wn.2d at 235.

Following the court's decision in Ali and Domingo-Cornelio, the State concedes that Houston-Sconiers established a significant and material change in

---

[3] RCW 10.73.100(6) provides, "The time limit specified in RCW 10.73.090 does not apply to a petition or motion" when "[t]here has been a significant change in the law, whether substantive or procedural, which is material to the conviction, sentence, or other order entered in a criminal or civil proceeding instituted by the state or local government, and either the legislature has expressly provided that the change in the law is to be applied retroactively, or a court, in interpreting a change in the law that lacks express legislative intent regarding retroactive application, determines that sufficient reasons exist to require retroactive application of the changed legal standard."

the law that applies retroactively to Forcha-Williams's sentence and his PRP is not time barred.[4]

DISCUSSION

The question on review is whether Forcha-Williams is entitled to resentencing. A petitioner is entitled to resentencing if he demonstrates "he was actually and substantially prejudiced by the error in sentencing and there are no other adequate remedies available under the circumstances." Ali, 196 Wn.2d at 242. "A petitioner establishes actual and substantial prejudice when a sentencing court fails to consider mitigating factors relating to the youthfulness of a juvenile tried as an adult and/or does not appreciate its discretion to impose any exceptional sentence in light of that consideration." Domingo-Cornelio, 196 Wn.2d at 267-68; see also Ali, 196 Wn.2d at 241-42.

We review sentencing decisions for abuse of discretion. State v. Delbosque, 195 Wn.2d 106, 116, 195 P.3d 806 (2020). If a court's decision rests on untenable grounds or if a court made its decision for untenable reasons, we will reverse the sentence. Id.

---

[4] We granted the State's motions to stay the PRP pending our Supreme Court's determination as to whether Houston-Sconiers applies retroactively. See In re Pers. Restraint of Ali, 196 Wn.2d 220, 474 P.3d 507 (2020); In re Pers. Restraint of Domingo-Cornelio, 196 Wn.2d 255, 262, 474 P.3d 524 (2020); In re Pers. Restraint of Meippen, 193 Wn.2d 310, 440 P.3d 978 (2019). Following the Supreme Court's decisions in those cases, we lifted the stay. The State again moved to stay pending the United States Supreme Court's decision to grant certiorari in Ali and Domingo-Cornelio pending our Supreme Court's decision in In re Pers. Restraint of Carter-Vincent and In re Pers. Restraint of Vincent (consolidated under No. 95217-5). We denied the motions.

7

Absolute Discretion

Forcha-Williams contends the trial court mistakenly believed its discretion in sentencing him for a crime he committed at the age of 16 was limited by the SRA. He argues that under the Supreme Court's recent juvenile sentencing jurisprudence, the trial court has the constitutional discretion to impose a determinate sentence and is not obligated to impose a maximum sentence of life. We agree.

Like the Eighth Amendment's bar against cruel and unusual punishment, article I, section 14 of the Washington State Constitution protects against cruel punishment. In re Pers. Restraint of Monschke, 197 Wn.2d 305, 311, 482 P.2d 276 (2021). In the context of juvenile sentencing, article I, section 14 provides greater protection than the Eighth Amendment. Id. at 311. It prohibits the imposition of mandatory life without the possibility of parole sentences for juvenile offenders, and it "requires courts to exercise 'complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant,' even when faced with mandatory statutory language." Id. at 323 (quoting Houston-Sconiers, 188 Wn.2d at 21).

Houston-Sconiers requires courts to consider the mitigating qualities of youth and provides that "courts have discretion to impose downward sentences 'regardless of how the juvenile got there.' " State v. Gilbert, 193 Wn.2d 169, 176, 438 P.3d 133 (2019) (determining that because the court "believed he did not have discretion to consider anything other than an adjustment to the aggravated

murder sentence, he did not consider whether the mitigating factors of Gilbert's youth might warrant an exceptional sentence") (quoting Houston-Sconiers, 188 Wn.2d at 9).

In Ali, the court "was presented with, and considered, testimony and evidence regarding the mitigating factors of Ali's youthfulness, but she found that she lacked the discretion to impose an exceptional sentence downward based on those mitigating factors." 196 Wn.2d at 243. That court "made a point to note for the record that she was imposing what she believed to be the lowest available sentence and that Ali's age was the primary reason she imposed the low end sentence." Id. at 244. Our Supreme Court concluded that while the sentencing court considered the mitigating qualities of Ali's youth and arguments for an exceptional sentence, the lower court did not understand that the constitution "requires absolute discretion to impose any sentence below the standard range based on youthful diminished culpability." Id.

In the instant case, the court specifically said, "I know that the juvenile system is very different than the adult system -- little discretion, available remedies." The court also said the legislature established the SRA and the court was required to follow the SRA: "I understand that a lot of people think that sentencing is where judges have the most discretion, but I am fairly certain your counsel probably told you about ranges and how in particular with this type of charge it is a life sentence. There is nothing I can do that changes that."

The State argues that "even if the sentencing court did not appreciate the full extent of its discretion, Forcha-Williams fails to establish by a preponderance of the evidence that his sentence would have been shorter if the court had the benefit of the Houston-Sconiers decision."  Relying on In re Pers. Restraint of Meippen, 193 Wn.2d 310, 440 P.3d 978 (2019), the State argues that because the court imposed a minimum term in the middle of the standard range and not the low end, Forcha-Williams cannot establish prejudice.

In Meippen, the trial court imposed the top of the standard range and a firearm sentence enhancement.  Id. at 315.  The majority opinion determined the trial court considered the mitigating factors of youth and "[n]othing in our record suggests that the trial court would have exercised its discretion to depart from the SRA sentence enhancement guidelines. The trial court determined that Meippen's actions were cold and calculated, and it clearly intended to impose a sentence at the top of the standard range despite Meippen's youth."  Id. at 316-17.  Our Supreme Court determined the juvenile was not entitled to collateral relief because he could not demonstrate any error actually and substantially prejudiced him.  Id. at 312.  The court held that defendants " 'must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that the outcome would more likely than not have been different had the alleged error not occurred.' "  Id. at 315-16 (quoting In re Pers. Restraint of Hagler, 97 Wn.2d 818, 825, 650 P.2d 1103 (1982) (quoting United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982))).

Unlike the trial court in <u>Meippen</u>, the court in the instant case made statements suggesting its discretion was limited despite its consideration of the mitigating factors of Forcha-Williams's youth. More importantly, since <u>Meippen</u>, the Supreme Court has held that "[u]nless the court meaningfully considers youth and knows it has absolute discretion to impose a lower sentence, we cannot be certain that an adult standard range was imposed appropriately on a juvenile under *Houston-Sconiers*." <u>Domingo-Cornelio</u>, 196 Wn.2d at 268. The State asks us to reject "a broad reading" of <u>Domingo-Cornelio</u> and <u>Ali</u> to suggest that a <u>Houston-Sconiers</u> error is, by itself, sufficient to establish prejudice on collateral review. We need not read those cases broadly because the plain language speaks for itself:

> A petitioner establishes actual and substantial prejudice when a sentencing court fails to consider mitigating factors relating to the youthfulness of a juvenile tried as an adult *and/or* does not appreciate its discretion to impose any exceptional sentence in light of that consideration.

<u>Id.</u> at 267-68 (emphasis added).

Certainly, when a court imposes the low end of the standard range after the State recommended the high end, and the court did not comply with <u>Houston-Sconiers</u>, it suggests that more likely than not the defendant "would have received a lesser sentence had the court complied with the dual mandates of *Houston-Sconiers*." <u>Id.</u> at 268. And when a court imposes the lowest possible sentence within the standard range and expressly states that the law does not allow the court to depart from mandatory enhancements, it also suggests that the

11

defendant likely would have received a lesser sentence. See Ali, 196 Wn.2d at 244-45.

However, nothing in Domingo-Cornelio or Ali suggests that when a court believes it had no choice but to impose a maximum indeterminate term of life, we should presume it would not have imposed an exceptional sentence if it knew it had absolute discretion and if it complied with the Houston-Sconiers mandates.

The State, citing In re Pers. Restraint of Coggin, 182 Wn.2d 115,120, 340 P.3d 810 (2014), argues that "[t]he importance of finality generally requires 'a higher standard be met before a presumption of prejudice attaches on collateral review.' " Coggin is inapposite because it involved the question of whether the adult petitioner could establish by a preponderance of the evidence that the constitutional violation of his right to public trial actually and substantially prejudiced him. 182 Wn.2d at 119. Coggin did not address sentencing.

Our courts have "long held 'the existence of an erroneous sentence requires resentencing.' " In re Pers. Restraint of Call, 144 Wn.2d 315, 333, 28 P.3d 709 (2001) (quoting State v. Ford, 137 Wn.2d 472, 485, 973 P.2d 452 (1999) (remanding for resentencing when the court imposed an exceptional sentence under the SRA after using an incorrect offender score to calculate the standard range) (quoting Brooks v. Rhay, 92 Wn.2d 876, 877, 602 P.2d 356 (1979))). In Call, the court imposed a low end sentence based on an inaccurate offender score. Id. at 318. The State argued the petitioner was not entitled to relief because the sentence was still within the standard range of the correct

lower offender score. Id. at 333. Our Supreme Court noted, however, that while the sentencing court did not specifically indicate on the record that it intended to impose a sentence at the low end of the standard range, it did impose the low end of the incorrect standard range. Id. The court remanded for resentencing because the "sentencing court should be afforded an opportunity to determine the appropriate sentence based upon accurate information." Id. The court explained that "the incorrect calculation of an offender score constitutes a fundamental defect in sentencing resulting in a miscarriage of justice which requires relief in a personal restraint proceeding." Id.

Similarly, even if the court in the instant case intended to impose the midrange minimum sentence, the court and defense counsel were understandably unaware that the court was not required to impose a maximum indeterminate term of life.

The State contends a sentencing court has discretion to impose an exceptional sentence affecting only the minimum term of the standard SRA range imposed. The State argues a court cannot exercise its discretion to impose a sentence below the SRA's required maximum term as part of an indeterminate sentence. We disagree.

Mandatory sentences for youthful defendants charged in adult court are unconstitutional. As we recently observed in State v. Rogers,

> [T]he holding of Houston-Sconiers does not apply only to situations
> in which an exercise of discretion is required to avoid the imposition
> of a mandatory life without parole sentence. Rather, Houston-
> Sconiers applies the animating principles of Miller, 567 U.S. at

> 480—that 'children are different' and that courts must be
> empowered to treat them differently—to all instances in which
> juveniles are sentenced in adult court.

No. 80404-9-I, slip op. at *5 (Wash. Ct. App. May 17, 2021),

http://www.courts.wa.gov/opinions/pdf/804049.pdf.  Courts sentencing youth

must have discretion to deviate from the SRA's standard range that applies to

adults.  Just as a court has discretion to impose an exceptional sentence below

the SRA's standard range or the minimum term, it has discretion to impose an

exceptional sentence below the SRA's indeterminate maximum term.

The State argues that "discretion is not required before imposing a

maximum sentence under RCW 9.94A.507, because the maximum sentence

under an indeterminate sentencing scheme is merely a possibility" and that an

indeterminate sentence "merely guarantees the public that rehabilitation and

maturity actually occurs."  However, absolute discretion does not prevent a court

from imposing an indeterminate sentence that considers time for rehabilitation

and maturity.  It simply allows courts to determine whether the SRA's minimum

term and indeterminate maximum life term required for adults are appropriate in

consideration of the mitigating qualities of youth.  Furthermore, the Eighth

Amendment and article I, section 14 require courts to exercise "discretion at the

time of sentencing itself, regardless of what opportunities for discretionary

release may occur down the line."  Houston-Sconiers, 188 Wn.2d at 20;

Monschke, 197 Wn.2d at 285.

The State next argues the "discretion required by Houston-Sconiers does not allow the sentencing court to impose a determinate sentence — under an entirely different statute for other offenses — when RCW 9.94A.507 outlines an indeterminate one." However, our Supreme Court has rejected similar arguments.

> Although Houston-Sconiers did not involve a resentencing under RCW 10.95.035, it did address and resolve the discretion judges have in sentencing for crimes committed by juveniles and, important to the issue here, the discretion to consider exceptional sentencing even where statutes would otherwise limit it. Our opinion in that case cannot be read as confined to the firearm enhancement statutes as it went so far as to question *any* statute that acts to limit consideration of the mitigating factors of youth during sentencing.

Gilbert, 193 Wn. 2d at 175.

Accordingly, we reverse and remand to provide the court the opportunity to resentence Forcha-Williams with a full understanding of its absolute discretion.

Youthfulness

Forcha-Williams also contends the court failed to consider the mitigating qualities of his youth. We disagree.

To comply with the Eighth Amendment and article I, section 14, courts sentencing juveniles must consider:

> [A]ge and its "hallmark features," such as the juvenile's "immaturity, impetuosity, and failure to appreciate risks and consequences." It must also consider factors like the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation in the crime, and "the way familial and peer pressures may have affected him [or her]." And it must consider how youth impacted any legal defense, along with any factors suggesting that the child might be successfully rehabilitated.

15

Houston-Sconiers, 188 Wn.2d at 23 (quoting Miller, 567 U.S. at 471); Monschke, 197 Wn.2d at 311.  However, "youth is not a per se mitigating factor."  State v. Gregg, 196 Wn.2d 473, 478, 474 P.3d 539 (2020).

In State v. Ramos, the Supreme Court explained,

> The sentencing court must thoroughly explain its reasoning, specifically considering the differences between juveniles and adults identified by the Miller Court and how those differences apply to the case presented. While formal written findings of fact and conclusions of law are not strictly required, they are always preferable to ensure that the relevant considerations have been made and to facilitate appellate review.

187 Wn.2d 420, 444, 387 P.3d 650 (2017).  Judges are not required to "always signal in their oral rulings that they would exercise more discretion if they felt they had the authority to do so."  Domingo-Cornelio, 196 Wn.2d at 267-68.

In Domingo-Cornelio, "there [was] no evidence to suggest that the sentencing court considered any mitigating circumstances relating to Domingo-Cornelio's youth."  196 Wn.2d at 267.  "The sentencing judge said that she had read the letters from friends and family and imposed this sentence 'considering all of the information before the Court,' but she made no mention of Domingo-Cornelio's youth in her ruling."  Id. at 261.

Unlike the sentencing court in Domingo-Cornelio, the court that sentenced Forcha-Williams stated it reviewed the presentence reports and recognized the similarity between Forcha-Williams's case and that of similarly situated youth: "I have thought -- thought a lot about your case, sir. It is incredibility indicative of what happens when kids step out of schooling."  The court explained that at the

time Forcha-Williams committed the offense, "things were really going down -- expulsion, substance use -- and all of those things are considerations." The court acknowledged, "You have had a tough road to this point." The court specifically recognized the fact that Forcha-Williams was a teenager being sentenced in adult court: "It's not easy. I think as you sit here you have seen how not easy it is to go from being a teenager to an adult, from being a kid to an adult. We treat them very differently, don't we?" The court also considered Forcha-Williams's prospects for rehabilitation: "I . . . particularly noticed in your presentence report, Mr. Forcha-Williams, that you're willing to follow this court's order, and that's a good start as to what you should be doing in custody."

The record establishes the court engaged in meaningful consideration of the mitigating qualities of Forcha-Williams's youth and explained its reasoning.

CONCLUSION

The trial court considered the mitigating qualities of Forcha-Williams's youth. However, the court, without the benefit of Houston-Sconiers, Ali, Domingo-Cornelio, Monschke, or Rogers, understandably but mistakenly assumed it had to impose an indeterminate sentence within the standard range

at the minimum and with a maximum term of life.  We grant Forcha-Williams's

petition and remand for resentencing.

Coburn, J.

WE CONCUR:

Andrus, A.C.J.