IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56272-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| TRAVIS LEEROY COLUCCIO, | |
| Appellant. | |

MAXA, J. – Travis Coluccio appeals his conviction of intimidating a public servant. The conviction arose out of an incident where Coluccio yelled that he was going to beat a police officer while the officer was arresting Coluccio's girlfriend. Coluccio argues that the trial court erred in failing to give an instruction stating that his threat must be a "true threat" in order to convict him.

We hold that the invited error doctrine precludes Coluccio's argument. Accordingly, we affirm Coluccio's conviction.

FACTS

Lewis County Sheriff's Deputy Jared Kasinger stopped a vehicle driven by Coluccio's girlfriend, Ashley Church, and arrested her. Coluccio showed up at the scene and began yelling at Kasinger. The State charged Coluccio with intimidating a public servant.

At trial, Kasinger testified that as he was in the process of arresting Church, a vehicle pulled up behind his patrol vehicle. Coluccio and his mother, Teresa Johnson, were in the

vehicle. Kasinger testified that Coluccio exited the vehicle and repeatedly yelled that he was "going to beat [Kasinger's] ass." Report of Proceedings (RP) at 111. Kasinger stated that Coluccio was very animated and began to approach Kasinger with closed fists. At the same time, Church was in handcuffs but was actively trying to resist arrest. Kasinger was afraid and radioed for backup to hurry.

Johnson testified for the defense. She testified that Coluccio stayed in the vehicle, and yelled, "[Y]ou're lucky you're an officer, otherwise I'd kick your ass." RP at 181. Coluccio testified that he stayed in the vehicle and yelled out the window, "If you were not a cop than I would beat your ass." RP at 191.

The State proposed a to-convict instruction that instructed the jury that (1) Coluccio's words or conduct must have placed Kasinger in reasonable fear that the threat would be carried out, and (2) the fear from the threat was a fear that a reasonable criminal justice participant would have under all the circumstances. Coluccio objected. He argued that the State added extra elements in the to-convict instruction. The State reponded that it was necessary because the threat must be a true threat. The State explained:

> [I]t's necessary because the defendant has 1st Amendment rights.
>
> So, for example, the case law in this case talks about harassment, and if you're just trash-talking or, you know -- that's a 1st amendment right, where it crosses into a crime is when that talk becomes a true threat. And a true threat is one that is perceived by the person receiving the threat, and it includes the fact that he was placed in reasonable fear, under the circumstances.
>
> So the State believes that those other elements are essentially required in this particular case.

RP at 210-11.

Coluccio proposed a definitional instruction for threat, which stated, "A 'threat' as used in the charge of intimidating a public servant is defined as to communicate, directly or indirectly,

2

the intent immediately to use force against any person who is present at the time." Clerk's Papers (CP) at 66. The proposed instruction did not include a requirement that the intimidation constitute a true threat.

The trial court accepted the State's proposed to-convict instruction. Coluccio's attorney then stated, "[A]s long as my definition is added, for threat, I'm okay with that." RP at 217. The court agreed and gave the instruction that Coluccio requested with a definition of threat. The court instructions did not include a requirement that the intimidation constitute a true threat. And Coluccio did not request such an instruction.

The jury found Coluccio guilty of intimidating a public servant. Coluccio appeals his conviction.

ANALYSIS

Coluccio argues that the trial court erred in failing to instruct the jury that his threat must be a "true threat" in order to convict him. We conclude that Coluccio invited any error.

The invited error doctrine prohibits a party from setting up an error at trial and then challenging that error on appeal. *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 119, 340 P.3d 810 (2014). To determine whether the invited error doctrine applies, we consider whether the defendant "affirmatively assented to the error, materially contributed to it, or benefited from it." *State v. Momah*, 167 Wn.2d 140, 154, 217 P.3d 321 (2009). Under this test, the invited error doctrine precludes appellate review of a defendant's claim of instructional error when the trial court gave the instruction at the defendant's request. *State v. Studd*, 137 Wn.2d 533, 547, 973 P.2d 1049 (1999).[1]

---

[1] In addition, the failure to request a jury instruction generally precludes review of the court's failure to give the instruction. *State v. Scott*, 110 Wn.2d 682, 689-91, 757 P.2d 492 (1988).

Under RCW 9A.76.180(1), "[a] person is guilty of intimidating a public servant if, by use of a threat, he or she attempts to influence a public servant's . . . decision, or other official action as a public servant." This statute defines threat as "[t]o communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time." RCW 9A.76.180(3)(a).

The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." To avoid violating the First Amendment, a statute criminalizing threatening language must be construed "as proscribing only unprotected true threats." *State v. Allen*, 176 Wn.2d 611, 626, 294 P.3d 679 (2013).

Here, the State acknowledged that Coluccio had First Amendment rights, and referenced a definition of true threat when responding to Coluccio's objection to its to-convict instruction. Nevertheless, Coluccio did not propose a true threat instruction or argue that a true threat requirement be added to the to-convict instruction. Instead, Coluccio requested an instruction that defined "threat" as "[t]o communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time." CP at 66. Coluccio stated that he would withdraw his objection to the State's to-convict instruction if the trial court used his definition of threat. The court instructed the jury accordingly.

We conclude that Coluccio "materially contributed" to the alleged error. *Momah*, 167 Wn.2d at 154. Even after the State raised the true threat issue, Colucio did not request that the true threat requirement be included in the to-convict instruction or propose a separate true threat instruction. Instead, he insited that the court give an instruction defining "threat" that did not reference a true threat requirement. In agreeing to give this proposed instruction, the trial court had no reason to belive that Coluccio wanted a true threat instruction.

We hold that the invited error doctrine precludes our review of Coluccio's challenge to the jury instructions.

CONCLUSION

We affirm Coluccio's conviction of intimidating a public servant.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
GLASGOW, CJ

_____
VELJACIC, J.