# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| IN Re THE PERSONAL RESTAINT PETITION OF:<br><br>MICHAEL LYNN SUBLETT,<br><br>         Petitioner. | No.  45972-8-II<br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — Michael Lynn Sublett petitions for relief from personal restraint imposed following his conviction for first degree murder.  Sublett asserts in his personal restraint petition (PRP) that we should reverse his conviction and remand for a new trial because (1) the State committed prosecutorial misconduct by including a PowerPoint slide in its closing argument with the word "guilty" in red capital letters over his booking photograph, (2) the State deprived him of due process and violated his right to participate in his defense by forcing him to wear a stun device without a hearing regarding its necessity, (3) he was denied his right to testify because his attorney failed to move to reopen testimony after closing arguments when Sublett informed his attorney that he wanted to testify, (4) he is factually innocent of the two prior California convictions and the actual innocence doctrine should apply, and (5) he was denied effective assistance of counsel on three different occasions.

We hold that (1) Sublett was not prejudiced by any prosecutorial misconduct, (2) he was not denied his right to due process or right to participate in his trial by being forced to wear a stun device without an evidentiary hearing, (3) he fails to present competent evidence that he was

1

denied the right to testify, (4) he does not meet his burden of showing by clear and convincing evidence that he is factually innocent of the prior California convictions or that the actual innocence doctrine applies, and (5) he was not denied effective assistance of trial counsel. Therefore, we deny Sublett's personal restraint petition.

FACTS

The State charged Sublett with first degree murder or, in the alternative, first degree felony murder.[1]  During closing argument at his trial, the State presented a PowerPoint slide that included Sublett's and Christopher Olsen's, Sublett's codefendant, booking photographs with the word "guilty" typed across the pictures in red capital letters.  Surrounding the photographs were arrows pointing to the photographs with descriptive summary words of the evidence presented, like "FLIGHT," "MOTIVE," and "PLANNING," at the end of each arrow.  Olsen objected to the slide because the booking photographs had not been admitted into evidence.[2]  The State removed it from the screen at the trial court's request.

The jury found Sublett guilty of first degree murder.  At sentencing, the trial court found Sublett to be a persistent offender under the Persistent Offender Accountability Act[3] (POAA)

---

[1] The substantive facts of Sublett's charge and conviction are not at issue in this restraint petition, but those facts may be found in our Supreme Court's opinion affirming Sublett's conviction after his direct appeal.  *State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012).

[2] Olsen also objected to his unaltered booking photo, which the prosecutor presented at the beginning of his presentation in a different slide.  Sublett does not assign error to the slide with the unaltered booking photograph.

[3] RCW 9.94A.570.

because he had previously been convicted of robbery in California on at least two other occasions, which is a "most serious offense" felony. Resp. to PRP, App. A at 5.

Sublett appealed his conviction and, in a consolidated case with Olsen's appeal, Division One of this court affirmed. *State v. Sublett*, 156 Wn. App. 160, 231 P.3d 231 (2010), *aff'd* 176 Wn.2d 58 (2012). Our Supreme Court affirmed his conviction and mandated his case on February 12, 2013. *State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012). Sublett timely filed this personal restraint petition (PRP).

Sublett submitted a personal declaration with his PRP. First, Sublett asserts that he was forced to wear a shock device during trial without a hearing on whether the device was necessary. He states that he told his trial attorney he did not want to wear the device and that wearing it made him unable to concentrate or adequately communicate with his attorney because he was afraid of being shocked. Second, Sublett asserts that he is actually innocent of the trial court's POAA finding because he did not commit the two crimes of robbery in California because he did not threaten to harm the person from whom he stole money. Finally, Sublett declares that his attorney did not tell him that two previous California robbery convictions would qualify as "strikes" if he did not take the State's offered plea deal, in which the State agreed it would not attempt to treat those convictions as strikes during sentencing. Decl. of Sublett at ¶ 3. Sublett asserts that he would have taken the plea deal if he had known this information.

In considering his PRP, we ordered that Sublett's petition be transferred to Thurston County Superior Court for a reference hearing on several of Sublett's claims of error because he raises factual issues that could not be determined on the limited record before us. We asked the superior court to address the following questions:

(1) Did the State offer Sublett a plea bargain in which the State agreed that it would not ask the trial court during sentencing to count Sublett's 1984 and 1985 California robbery convictions as "strikes" for the purpose of a persistent offender finding under the persistent offender statute, RCW 9.94A.570?

(2) If so, did Sublett's counsel advise Sublett of the State's offer and the potential consequences of Washington's persistent offender statute as it applies to Sublett's 1984 and 1985 California robbery convictions?

(3) Was Sublett wearing a stun belt during trial?

(4) If so, did Sublett raise the stun belt issue with the court and was it visible to the jury?

(5) Did the stun belt interfere with Sublett's ability to consult with, or to assist his counsel at trial, or have any other effect on Sublett or his exercise of any other rights? If so, what was the effect?

(6) Did Sublett tell his counsel about the stun belt and ask whether the stun belt could be removed? If so, did Sublett's counsel object or otherwise bring the stun belt issue to the trial court's attention?

(7) If defense counsel did not object to the stun belt, did counsel make a tactical decision to not do so? If so, why?

Order Transferring Petition For Reference Hearing Opinion at 3 (July 2, 2015).

The superior court held the reference hearing on September 23, 2015, and the following witnesses testified: Michael Sublett; David Soukup, a former Thurston County Deputy Prosecutor; David Bruneau, a former Thurston County Deputy Prosecutor and lead attorney in the case; Charles Lane, Sublett's attorney during the entire case below; Scott Jackson, a Thurston County Prosecuting Attorney who second-chaired the trial; retired Thurston County Trial Court Judge Christine Pomeroy, who presided over the trial; and Sgt. Timothy Mills, Thurston County Sheriff's Office. Verbatim Report of Proceedings (VRP) (September 23, 2015). After the hearing, the superior court issued the following written findings of fact:[4]

---

[4] Based on its findings at the reference hearing, the superior court did not reach the second question or portions of question six.

1.0  No plea offer was made to Michael Sublett.

. . . .

2.0  Michael Sublett was wearing a stun device, called a Band-It, at trial.  The device was not a belt nor was it worn as a belt.

2.1  The prosecutors and the defense attorney were aware that Mr. Sublett was wearing a stun device.  Mr. Bruneau and Mr. Jackson both testified that there was discussion at trial, not on the record, about Michael Sublett wearing a stun device. Mr. Lane also recalled those discussions, although not with as much certainty.

2.2  The trial judge likely was aware of the device being used.  Judge Pomeroy testified that she did not recall many specifics about the trial or the top of the stun device, but she would have normally been informed if a defendant was wearing some type of restraint.

. . . .

3.0  Michael Sublett did not raise the issue of the stun device to the trial court.

3.1  Charles Lane did not recall Mr. Sublett ever telling him he was uncomfortable because of the device nor did Mr. Sublett ever complain about wearing it.

3.2  Mr. Lane testified credibly that, although his memory on this issue was not particularly strong, if Mr. Sublett had raised concerns with him about the stun device he would have raised them with the court.

. . . .

3.4  There is no evidence that the jury saw any restraint device.  The testimony of the attorneys as well as Mr. Sublett was that Mr. Sublett was seated farther from the jury than anyone else, including the attorneys and the co-defendant.  Mr. Sublett never walked in the presence of the jury.

4.0  The stun device had no negative effect on Michael Sublett's exercise of any of his rights at trial.  The Band-It more likely than not affected Mr. Sublett's behavior during trial but it is also more likely than not that he actively and regularly participated in this trial.

4.1  While the stun device might have partially limited Mr. Sublett's ability to speak with his attorney at the time and in the manner he wished, Mr. Lane did not want Mr. Sublett to speak to him during trial and would have not allowed him to do so. Mr. Lane preferred, in all cases including this one, that his clients communicate only in writing in the courtroom during trial. Every example given by Mr. Sublett at the hearing as an example of the Band-It interfering with his ability to communicate with his attorney was an example of Mr. Lane's trial tactics.

4.2 Mr. Sublett was able to assist his counsel at trial. They communicated regularly during the trial, during recesses, and otherwise. He and Mr. Lane testified that they were seated approximately one foot apart at the counsel table. Mr. Sublett wrote a number of notes to Mr. Lane, and Mr. Lane read those notes.

. . . .

4.4 The presence of the stun device more likely than not affected Mr. Sublett's behavior at trial. It may have caused him to behave consistently with the instructions of his attorney. He made no physical gestures to get his attorney's attention partly because of the device and partly because of Mr. Lane's instructions.

. . . .

5.0 It is more likely than not that Mr. Sublett did not ask his counsel whether the stun device could be removed.

5.1 Although Mr. Sublett testified that he complained to Mr. Lane about having to wear the device, and Mr. Lane refused to take any action, the attorneys and the judge testified that it was not the practice at that time to hold hearings regarding the issue of the stun device. Mr. Lane observed nothing that caused him concern that the jury was aware of any restraints. The prosecutors testified that they did not notice any restraint or anything unusual.

5.2 Mr. Lane testified that his practice was and is that if a defendant raises concerns about wearing a security device[,] he will bring it to the attention of the trial court. Nothing at the trial caused him any concern.

. . . .

6.0 It is more likely than not that Mr. Lane made a tactical decision not to object to the stun device. . . . Mr. Lane testified that he would have brought to the attention of the court any concerns he observed or that were raised by Mr. Sublett. He did not recall Mr. Sublett objecting to the stun device.

Findings of Fact Following Reference Hearing and Order Transferring Record (Dec. 3, 2015) (FOF).

## ANALYSIS

### I. STANDARD OF REVIEW ON PRPs

We may grant a petitioner collateral relief from unlawful restraint if he establishes by a preponderance of the evidence that a constitutional violation resulted in actual and substantial prejudice. *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 121, 340 P.3d 810 (2014). We

determine actual prejudice in light of the totality of the circumstances.[5] *In re Pers. Restraint of Brockie*, 178 Wn.2d 532, 539, 309 P.3d 498 (2013). The ultimate question in determining whether the petitioner has been actually prejudiced is whether the error "so infected petitioner's entire trial that the resulting conviction violates due process." *In re Pers. Restraint of Music*, 104 Wn.2d 189, 191, 704 P.2d 144 (1985). To receive relief following a nonconstitutional error, the petitioner must show a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 676, 327 P.3d 660 (2014).

We review the trial court's findings of fact from the reference hearing to determine whether they are supported by substantial evidence and whether the findings support the conclusions of law. *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 410, 972 P.2d 1250 (1999). Unchallenged findings of fact will be treated as verities on appeal. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 679, 101 P.3d 1 (2004). We defer to the trial court on issues related to the credibility of witnesses. *Gentry*, 137 Wn.2d at 410-11.

## II. PROSECUTORIAL MISCONDUCT

Sublett first argues that we must grant him relief due to a slide in the State's PowerPoint presentation during closing argument that included his booking photograph with the word "guilty" typed in red capital letters across his face, arrows pointing to the photograph, and descriptive

---

[5] In his supplemental brief, Sublett claims that because he could not raise the stun device issue on his direct appeal, he should not have to prove actual and substantive prejudice in his PRP citing *State v. Sandoval*, 171 Wn.2d 163, 168-69, 294 P.3d 1015 (2011). We disagree that this standard of review of a PRP applies in this case.

summary terms of evidence that the prosecutor discussed during closing argument.[6]  We disagree

because Sublett cannot prove that he was prejudiced by the slide.

Both the United States Constitution and the Washington State Constitution grant the right

to a fair trial.  U.S. CONST. amend. VI, XIV; CONST. art. I, § 22.  Prosecutorial misconduct

jeopardizes that right.  *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703-04, 286 P.3d 673

(2012).  A prosecutor may use graphics in closing argument and generally has "wide latitude to

argue reasonable inferences from the evidence," but those visual aids cannot deprive a defendant

of the constitutional right to a fair trial.  *State v. Hecht*, 179 Wn. App. 497, 503, 319 P.3d 836

(2014).

To prove prosecutorial misconduct, a personal restraint petitioner must show that in the

context of the record and all of the circumstances at trial, the prosecutor's conduct was both

improper and prejudicial.  *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 496, 251 P.3d

884 (2010).  To establish prejudice, the petitioner must show a substantial likelihood that the

misconduct affected the jury's verdict.  *Monschke*, 160 Wn. App. at 496.

We look to the context of the prosecutor's argument, the issues in the case, the evidence,

and the jury instructions.  *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).  When a

petitioner does not object to misconduct at trial, he or she has waived the claim of error unless the

misconduct was so flagrant and ill-intentioned that it caused an enduring prejudice that could not

---

[6] On his direct appeal, Sublett argued that the slide in question constituted prosecutorial misconduct, but we declined to review the error because Sublett relied on facts outside the record and did not provide any legal argument or citations.  *Sublett*, 156 Wn. App. at 199.

have been cured with a jury instruction. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011).

Assuming without deciding that the slide at issue here was improper, Sublett cannot demonstrate prejudice. The prosecutor's closing argument did not "essentially [produce] a media event with the deliberate goal of influencing the jury to return [a guilty verdict]" against Sublett. *Glasmann*, 175 Wn.2d at 708. The record is unclear on whether the jury saw the word "guilty" on the slide at all, given the context of the prosecutor's statements when Olsen's counsel objected. Even assuming that the jury saw the word "guilty," however, it was before the jury only a few moments because Olsen's counsel objected to the slide and the trial court asked the prosecutor to remove the slide from the jury's view.

Furthermore, according to the facts in the Supreme Court's *Sublett* opinion, there is no likelihood that the slide affected the jury's verdict. After April Frazier[7] and Sublett stole over $51,000 from the victim over a period of time, Frazier testified that she, Olsen, and Sublett went to the victim's home. Olsen and Sublett then "proceeded to beat [the victim] with a baseball bat." *Sublett*, 176 Wn.2d at 66. The three later returned to the victim's home where they proceeded to "loot" for valuables. *Sublett*, 176 Wn.2d at 66. Sublett's defense at trial was a general denial that he was involved in the crime at all. *Sublett*, 156 Wn. App. at 180.

The trial court instructed the jury to decide the facts based on the evidence presented to it and that the lawyer's remarks, statements, and arguments were not evidence. Jurors are presumed to follow the court's instructions. *State v. Kalebaugh*, 183 Wn.2d 578, 586, 355 P.3d 253 (2015).

---

[7] Frazier was a third person involved in the crime. *Sublett*, 176 Wn.2d at 65.

Given the evidence presented at trial and the trial court's instruction, Sublett fails to show that the slide so infected his entire trial that his conviction violated due process. Thus, Sublett cannot demonstrate actual prejudice.

### III. USE OF STUN DEVICE

Sublett next claims that his right to due process was violated because he was forced to wear a stun device during trial without a hearing on its necessity and that the device prevented him from adequately communicating with his attorney or participating in his defense and thus reversal is required.[8] We disagree.

A criminal defendant has the right to appear at trial without physical restraint except in extraordinary circumstances. *State v. Jennings*, 111 Wn. App. 54, 61, 44 P.3d 1 (2002). Restrains are disfavored because they may impact the constitutional right to the presumption of innocence as well as the right to testify in one's own behalf and the right to confer with counsel during trial. *State v. Damon*, 144 Wn.2d 686, 691, 25 P.3d 418 (2001). The trial court must undertake on the record a reasoned analysis of weighing the reasons for restraining a defendant against the defendant's right to due process. *State v. Elmore*, 139 Wn.2d 250, 273, 985 P.2d 289 (1999). A trial court's failure to do so constitutes constitutional error. *State v. Clark*, 143 Wn.2d 731, 775, 24 P.3d 1006 (2001).

---

[8] Sublett claims that reversal "should be" required where no hearing on restraints was held and where "it is clear that the use of the restraint was unjustified." PRP at 9. Sublett does not provide any citation to authority for this asserted rule. Thus, we do not further address it. *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012) ("We do not consider conclusory arguments unsupported by citation to authority.").

The State concedes that the trial court did not conduct a hearing to address the stun device that Sublett wore during the trial. At the reference hearing, the superior court found that Sublett was wearing a stun device at trial, the attorneys and the trial court were aware of that fact, and the trial court likely was aware and normally would have been informed of a security device. FOF 2.0–2.2. However, the superior court found that there was no evidence that the jury saw the stun device and the attorneys at trial did not notice the device on Sublett. FOF 3.4. The superior court also found at the reference hearing that defense counsel did not observe anything that caused him to be concerned that the jury was aware of the stun device and that if a defendant raises concerns about a security device, defense counsel would have brought the issue to the trial court's attention. FOF 3.4, 5.1.

Furthermore, the superior court found that the device did not negatively impact Sublett's rights although Sublett testified at the reference hearing that he believed it did. FOF 4.0, 5.1. The device did not prohibit Sublett from communicating with his counsel at trial and he was able to assist with his defense. FOF 4.1, 4.2. Although the device more likely than not affected Sublett's behavior, the superior court found that Sublett regularly communicated with his counsel during trial and recesses. FOF 4.1, 4.2, 4.4. The superior court also found that it was defense counsel's practice to instruct all of his clients to communicate by writing notes during trial. FOF 4.1. The superior court also found that defense counsel did not recall Sublett objecting to the stun device or asking that it be removed and he determined that the device must not have been interfering with Sublett's ability to communication with him or assist in his defense. FOF 6.0. Because Sublett failed to challenge any of the findings of fact entered after the reference hearing, they are verities on appeal.

11

Sublett fails to demonstrate that the stun device caused actual and substantial prejudice, and this claim fails.  *Coggin*, 182 Wn.2d at 120.

## IV.  RIGHT TO TESTIFY

Sublett next claims that his constitutional right to testify and to effective assistance of counsel was violated because his attorney failed to move to reopen testimony after closing arguments so that he could testify.  But Sublett's declaration does not provide any facts that, if proven true, would support his claim.[9]  Thus, he has not demonstrated by a preponderance of the evidence that he is entitled to relief.  *Coggin*, 182 Wn.2d at 119.

## V.  ACTUAL INNOCENCE DOCTRINE

Sublett claims that he is actually innocent of the two prior California robberies because he committed a lesser offense which is not comparable to second degree robbery in Washington and thus, are not strike offenses.[10]  Sublett cites to the actual innocence doctrine and *In re Pers. Restraint of Carter*, 172 Wn.2d 917, 263 P.3d 1241 (2011).

The actual innocence doctrine applies when a defendant can show by clear and convincing evidence that an alleged constitutional error resulted in the conviction of an actually innocent

---

[9] In Sublett's direct appeal he raised this issue in his statement of additional grounds and we declined to address it because supporting facts for the claim of error were not part of the record. *Sublett*, 156 Wn. App. at 199.

[10] He claims that he did not "threaten to harm" the person from whom he stole the money, instead he "tricked" a teller into opening a cash drawer and then he grabbed the money, and he would have been convicted of a lesser crime, which would not be considered a strike offense. Decl. of Sublett at ¶ 9.

defendant and a "fundamental miscarriage of justice would otherwise result if the collateral attack is dismissed." *Carter*, 172 Wn.2d at 923.[11]

On direct appeal, our Supreme Court already held that Sublett's California convictions qualify as strike offenses and affirmed his life sentence as a persistent offender.[12] *Sublett,* 176 Wn.2d at 89. Assuming without deciding that the actual innocence doctrine even applies, Sublett fails to provide any evidence of a constitutional error related to the persistent offender sentence. Thus, he has not met his burden of showing by clear and convincing evidence that he was actually factually innocent of the underlying California robberies upon which the court based its persistent offender finding.

---

[11] "There are two forms of an actual innocence claim. The first are free-standing constitutional claims of actual innocence in which innocence itself provides a basis for relief. The second are so-called gateway claims used to avoid procedural time bars so that a court may review other claimed constitutional errors. *In re Pers. Restraint of Weber*, 175 Wn.2d 247, 256, 284 P.3d 734 (2012) (internal quotation marks omitted).

[12] At sentencing in Washington, the State filed its sentencing memorandum, Sublett's criminal history, evidence of Sublett's California 1994 and 1997 robbery charges and convictions, a copy of California Penal Code § 211, and a transcript of the California sentencing hearing for the 1994 robbery conviction. For each count of robbery, the charging document in 1994 and 1995 alleged that Sublett "willfully, unlawfully, and by means of force and fear take personal property from the person, possession, and immediate presence" of the victim. Resp. to PRP, App. H at 18, 26. Sublett's California defense counsel argued to the California sentencing court that "[Sublett's actions] while I'm sure it frightened and upset [the victim], she was physically unharmed by the incident." Resp. to PRP, App. H at 15 (VRP at 3 (Feb. 15, 1994)). The sentencing court in Washington agreed that the elements of California Penal Code § 211 were comparable to the elements of Washington's counterpart for the crime of second degree robbery. Resp. to PRP, App. H at 3 (Plaintiff's Sentencing Memorandum). On direct appeal, the Court of Appeals affirmed, finding the elements of both crimes substantially similar, with each crime requiring a specific intent to steal. *Sublett,* 152 Wn. App. 160 at 187.

## VI. EFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Lastly, Sublett claims that his trial counsel provided ineffective assistance on three different occasions: (1) during plea bargain negotiations, (2) by failing to object to the stun device, and (3) during the State's closing argument by failing to object to slide 46. We disagree that Sublett was denied effective assistance.

The Sixth Amendment guarantees a defendant effective assistance of counsel. U.S. CONST. amend. VI; *State v. Kloepper*, 179 Wn. App. 343, 354, 317 P.3d 1088 (2014). In deciding whether a defendant was deprived of effective assistance, we apply the two-prong test of *Strickland v. Washington*—whether (1) counsel's performance failed to meet an objective standard of reasonableness and (2) the defendant was actually prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 690-92, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). When a defendant fails to demonstrate one prong of the *Strickland* test, we need not consider both prongs. *Klopper*, 179 Wn. App. at 354-55.

We are highly deferential to counsel's decisions, and a strategic or tactical decision is not a basis to find deficient performance. *Kloepper*, 179 Wn. App. at 354. On a claim of ineffective assistance of trial counsel in a personal restraint petition, a petitioner establishes actual and substantial prejudice if he or she demonstrates that but for counsel's deficient performance there is a reasonable probability that the outcome would have been different. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012).

### A. PLEA BARGAIN NEGOTIATIONS

Sublett claims that he was denied effective assistance of counsel during plea bargain negotiations because his counsel did not tell him about a plea bargain that he asserts he would have

accepted. After its reference hearing the superior court found that credible evidence proved that the State did not make any plea offer to Sublett. FOF 1.0. Because no plea offer was made to Sublett, this claim fails.

B. STUN DEVICE

Sublett claims that his counsel failed to object to the stun device constituting ineffective assistance of counsel. We disagree.

Trial counsel's decision of whether to object is "a classic example of trial tactics. Only in egregious circumstances . . . will the failure to object constitute incompetence of counsel justifying reversal." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). The superior court found after its reference hearing that Sublett's trial counsel was aware that Sublett was wearing a stun device. FOF 2.1. However, the superior court also found that it is more likely than not that Sublett did not ask his trial counsel for the device to be removed. FOF 5.1, 6.0. The superior court also found that Sublett's counsel made a tactical decision to not raise the issue of the stun device with the trial court and that the device had no impact on Sublett's constitutional rights. FOF 6.0. Thus, Sublett cannot show that counsel was deficient for failing to object nor that he was prejudiced by the decision to not object.

C. CLOSING ARGUMENT

Sublett claims his trial counsel was ineffective for failing to object to slide 46. Again, we disagree.

Trial counsel's decision to not object is a "classic example of trial tactics" to which we are highly deferential in a claim of deficient performance. *Madison*, 53 Wn. App. at 763; *Kloepper*, 179 Wn. App. at 354. Sublett cannot demonstrate that he was prejudiced for his counsel's decision

to not object to the slide because Olsen's counsel objected to it and the trial court asked the prosecutor to remove the slide from the jury's view. Thus, even if Sublett's counsel had objected, the result would have been the same. Therefore, Sublett cannot meet his burden to show that he was actually prejudiced by his trial counsel's decision to not object.

CONCLUSION

We hold that Sublett has failed to show he was actually and substantially prejudiced by any prosecutorial misconduct, he was not denied his right to due process or right to participate in his trial by being forced to wear a stun device without an evidentiary hearing, he fails to present competent evidence that he was denied the right to testify, he does not meet his burden of showing by clear and convincing evidence that he is factually innocent of the prior California convictions or that the actual innocence doctrine applies, and he was not denied effective assistance of trial counsel. Therefore, we deny Sublett's personal restraint petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, A.C.J.

LEE, J.

16