IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In Matter of the Personal Restraint of | ) | |
| | ) | No. 33866-5-III |
| KELDY ADALID GRANADOS, | ) | |
| | ) | |
| Petitioner. | ) | UNPUBLISHED OPINION |
| | ) | |

SIDDOWAY, J. — Through retained counsel, Keldy Granados seeks relief from

personal restraint resulting from his 2015 Franklin County bench trial conviction of

unlawful possession of methamphetamine. He contends the evidence against him was

insufficient including because, under the doctrine of corpus delicti, the trial court should

not have considered his uncorroborated confession. Alternatively, he seeks a new trial

because he never knowingly, voluntarily and intelligently waived trial by jury and because his Spanish-speaking lawyer interpreted critical court documents without being statutorily qualified or certified to do so.

The evidence against him was sufficient. We reject his argument that his unwitting waiver of trial by jury in what was substantially a stipulated facts trial was structural error. Because he fails to make the showing of prejudice that is required on collateral review, we dismiss the petition.

FACTS AND PROCEDURAL BACKGROUND

In December 2013, the State charged Keldy Granados with unlawful possession of methamphetamine, a class C felony, to which Mr. Granados pleaded not guilty. In early 2014, attorney George P. Trejo, Jr. began representing Mr. Granados and reached an agreement with the State to transfer proceedings from superior court to the Franklin County District Court, so that Mr. Granados could apply for the felony diversion program administered by that court.

At a hearing taking place on March 5, 2014, Mr. Granados, who is Spanish speaking only, applied for the felony diversion program on a three-page, single-spaced "Application to the Felony Diversion Program and Waiver of Arraignment, Preliminary Appearance and Speedy Trial." Mot. to Vacate under CrR 7.8 (CrR 7.8 Mot.), Ex. 3. The application form is in English. It includes multiple signature lines: one for the defendant, who declares that he or she has read or been read all of its 13 paragraphs; one

2

for the defendant's lawyer, who attests to reviewing the application with the defendant and being satisfied the defendant understands it; one for the prosecutor, who agrees to submit the case to the diversion program; and one for the court, in order to make a finding that the agreement has been entered knowingly and voluntarily by the defendant. Mr. Granados, Mr.Trejo, and the prosecutor had all signed the application.

The application form also includes an "Interpreter's Declaration" that had been completed by Mr. Trejo. It states:

> I am a certified interpreter or have been found otherwise qualified by the court to interpret in the * language, which the defendant understands, and I have translated this entire document for the defendant from English into that language. The defendant has acknowledged his or her understanding of both the translation and the subject matter of this document. I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

*Id.* at 3.

At the hearing, an unidentified interpreter was present. In Mr. Granados's presence, and with the interpreter interpreting in the Spanish language, Mr. Trejo represented to the court that he and Mr. Granados had gone over the application and that Mr. Granados knew the rights he was waiving and was making the application knowingly, voluntarily, and without compulsion. The application was accepted by the court, signed, and entered on the record.

Mr. Granados was approved for the program and executed a five-page, single-spaced felony diversion program agreement. Similar to the diversion application, the

3

diversion agreement, which is also in English, contained Mr. Granados's signed declaration that each of the paragraphs were read to him and explained by his attorney and that he freely and voluntarily agreed to enter into the felony diversion program. It, too, contained Mr. Trejo's signed interpreter declaration and statement that he had translated the entire document from English to the language that Mr. Granados understands.

Mr. Granados and Mr. Trejo appeared in district court for entry of the felony diversion agreement on November 6, 2014. Once again, a court interpreter was present to interpret for Mr. Granados. The court asked Mr. Granados on the record if he had discussed the program with his attorney, whether he understood it, and whether he was entering the program freely, voluntarily and without compulsion. Mr. Granados answered yes. CrR 7.8 Mot., Ex. 4; Verbatim Report of Proceedings (Nov. 6, 2014), at 7-8.

The felony diversion agreement provided that proceedings in Mr. Granados's case would be stayed and if he complied with its terms and conditions the charges would be dismissed after two years. If he did not, the stay would be lifted and the State would proceed to prosecute the charge. As part of the agreement, Mr. Granados submitted a sworn statement, entitled "Statement of Defendant," in which he admitted that on December 3, 2013, he unlawfully possessed methamphetamine. CrR 7.8 Mot., Ex. 10. The statement acknowledged that he made this "confession" with the advice of Mr. Trejo.

4

*Id.* He stipulated in the agreement that the statement would be admissible in evidence if he violated the agreement and the matter proceeded to trial. Because of immigration consequences, the State agreed that Mr. Granados could stop short of completely confessing to the controlled substance crime by omitting the jurisdictional element. It would have to be proved later if the prosecution was revived.

In December 2013, Mr. Granados violated the felony diversion agreement by testing positive for methamphetamine use. He also failed to appear for a compliance hearing in January 2014. The felony diversion proceeding was dismissed as a result and the case was refiled in superior court. Attorney Trejo withdrew.

The matter proceeded to a bench trial on April 7, 2015. An interpreter was present. New defense counsel, Craig Stilwill, informed the court that Mr. Granados had waived the right to a jury trial by entering the felony diversion program. That would later prove to be incorrect. While the diversion program application and agreement include waivers of many rights, jury trial is not one of them.[1] The prosecutor then explained that for immigration reasons the State had agreed to omit a jurisdictional basis from Mr. Granados's statement, so the officer who contacted Mr. Granados on December 3, 2013, would be called to complete the State's proof.

---

[1] The State's lawyer on appeal informs us that the diversion agreement has since been revised to include a waiver of jury trial. State's Supp. Br. at 10.

In the bench trial that followed, the court considered as evidence Mr. Granados's admission that he unlawfully possessed methamphetamine on December 3, 2013. Officer Adam Brewster was called to the stand and testified that on that date, while working as a police officer for the city of Pasco, he contacted the defendant Keldy Granados during a vehicle stop on Court Street in Pasco. He identified Mr. Granados in the courtroom as the person he stopped. The court then found that the State had proved beyond a reasonable doubt that Mr. Granados unlawfully possessed methamphetamine in Franklin County, Washington, on December 3, 2013. It imposed a 30-day jail sentence. Mr. Granados was advised of his appeal right by the court but did not file a direct appeal.

Mr. Granados initially filed the present petition in the superior court as a CrR 7.8 motion to vacate his judgment and sentence. The superior court transferred the motion to this court for consideration as a personal restraint petition (PRP). CrR 7.8(c)(2). The petition was timely filed under RCW 10.73.090(1). It was referred to a panel and, after requesting and receiving supplemental briefing, we considered it without oral argument.

PRP Review Standard

To obtain relief in a PRP, a petitioner must show actual and substantial prejudice resulting from alleged constitutional errors, or for alleged nonconstitutional errors a fundamental defect that inherently results in a complete miscarriage of justice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 505 (1990). To avoid dismissal, the petition must be supported by facts and not merely bald or conclusory allegations. *Id.*

6

at 813-14; *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). We

address the issues raised by Mr. Granados in the order raised in his petition.

1. Insufficient Evidence

The crime of unlawful possession of a controlled substance requires proof of two

elements: (1) possession (2) of a controlled substance. RCW 69.50.4013(1).

Methamphetamine is a controlled substance. RCW 69.50.206(d)(2). The State must also

prove jurisdiction by presenting evidence that the crime was committed "in the state."

RCW 9A.04.030(1). Mr. Granados contends that the State's evidence was insufficient to

establish jurisdiction because when called to testify, Officer Brewster merely testified to

stopping Mr. Granados in Pasco on December 3, 2013, not that Mr. Granados was in

possession of methamphetamine when stopped. Alternatively, he argues that under the

corpus delicti rule, his confession alone was insufficient to convict and the State failed to

provide independent evidence of his guilt.

In reviewing a challenge to the sufficiency of the evidence, we view the evidence

and all reasonable inferences in a light most favorable to the State to determine whether

any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Following a

bench trial, review is limited to determining whether substantial evidence supports the

findings of fact and, if so, whether the findings support the conclusions of law. *State v.

Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). "Substantial evidence" is

evidence sufficient to persuade a fair-minded person of the truth of the asserted premise.

*Id.*

### *Proof of Jurisdiction*

In first contending that the charge must be dismissed because the State failed to prove jurisdiction, Mr. Granados argues that because Officer Brewster gave no specific testimony linking his methamphetamine possession with the vehicle stop in Pasco, the evidence presented to the court amounts to proof that he possessed methamphetamine somewhere, sometime on December 3, 2013, but not that he possessed it in the State of Washington. He relies on two cases in which no testimony or reasonable inference established jurisdiction: *State v. Hickman*, 135 Wn.2d 97, 954 P.2d 900 (1998) (State failed to prove insurance fraud occurred in Snohomish County as required by the to-convict instruction, only that the subject stolen car was found there), and *State v. Ford*, 33 Wn. App. 788, 790-91, 658 P.2d 36 (1983) (jurisdiction not shown when there was no evidence presented that the ranch where incident occurred was in Washington State).

Mr. Granados fails to consider the lack of specificity in his own sworn statement, from which the trial court could draw an inference negative to him. The statement he made as part of the diversion agreement was, "On December 3, 2013[,] I did unlawfully possess a controlled substance, Methamphetamine." CrR 7.8 Mot., Ex. 10. He did not say he possessed it for only part of the day. He did not say he possessed it only outside of the State of Washington. The trial court was therefore entitled to infer from Mr.

8

Granados's statement that he possessed methamphetamine all day on December 3, 2013, and therefore necessarily possessed it when stopped by Officer Brewster in Pasco. This would be a fair inference in any case, but was particularly reasonable here, since the court was aware at the time Officer Brewster testified that the purpose of his testimony was to establish where Mr. Granados's admitted possession of methamphetamine occurred. Drawing all reasonable inferences in favor of the State, the evidence of jurisdiction was sufficient.

### *Corpus Delicti Rule*

Mr. Granados next argues that without further corroboration by the State, his confession to guilt was insufficient for conviction under the corpus delicti rule.

"The doctrine of corpus delicti protects against convictions based on false confessions, requiring evidence of the '"body of the crime."'" *State v. Cardenas-Flores*, 189 Wn.2d 243, 247, 401 P.3d 19 (2017) (quoting *State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996)). Under the corpus delicti rule, a defendant's confession alone is insufficient to convict and must be corroborated by independent evidence of guilt. *State v. Brockob*, 159 Wn.2d 311, 327-28, 150 P.3d 59 (2006)); *Aten*, 130 Wn.2d at 655-56. "[T]he State must present evidence independent of the incriminating statement that the crime a defendant *described in the* [*confession*] actually occurred." *Brockob*, 159 Wn.2d at 328. "[I]f no such evidence exists, the defendant's confession . . . cannot be used to

9

establish the corpus delicti and prove the defendant's guilt at trial." *Aten*, 130 Wn.2d at 656.

In *Cardenas-Flores*, our Supreme Court examined two distinct senses in which Washington courts have used the corpus delicti rule: as the evidentiary foundation required before admitting a defendant's confession into evidence, and as referring to the sufficiency of the evidence to support a conviction. 189 Wn.2d at 251-52. The characterization of corpus delicti invoked is not consequential at trial, the Supreme Court observed, since a prosecution that fails under one rationale will fail under the other. *Id.* at 251. The characterization has proved consequential on appeal, however, because in appeals in which this court analyzed corpus delicti as a rule of admissibility, it has sometimes held that the ability to rely on the doctrine is waived if no objection is made to admitting the confession at trial. *Cardenas-Flores* disapproved of those cases, holding that the doctrine is principally a rule of sufficiency that can be raised for the first time on appeal. *Id.* at 263.

In addressing the novel argument advanced by Mr. Granados it is helpful (and does not offend the reasoning in *Cardenas-Flores*) to examine corpus delicti's characterization and use as a rule of admissibility. Again, as observed in *Cardenas-Flores*, at the trial court level "either characterization should yield the same result." *Id.* at 251.

10

Had defense counsel objected to the trial court's consideration of Mr. Granados's

"Statement of Defendant" at trial, the objection would reasonably have been overruled—

not because there was corroborating evidence that the crime actually occurred, but

because Mr. Granados stipulated to the statement's admissibility. In his felony diversion

agreement, while represented by counsel, he agreed to the following:

> The defendant, with full knowledge of the alternative courses of action
> open to him/her, admits that he/she committed the acts alleged . . . above
> and as more particularly set out in the attached sworn statement (see
> attachment A) and further stipulates that said statement is freely and
> voluntarily given *and may be admitted into evidence in any court of law
> without objection should this matter come on for trial at a later time*.

CrR 7.8 Mot., Ex. 6 at 2 (emphasis added).

Many reported decisions recognize a criminal defendant's stipulations as valid and

binding, including stipulations made as a condition of a diversion or deferred prosecution

program. *E.g.*, *State v. Johnson*, 104 Wn.2d 338, 705 P.2d 773 (1985) (recognizing as

valid an Oregon conviction following a stipulated facts trial); *State v. Mierz*, 127 Wn.2d

460, 469, 901 P.2d 286 (1995) (stipulated facts trial based on defendant's stipulation to

factual findings prepared by prosecutor after an adverse ruling is "not problematic");

*State v. Shattuck*, 55 Wn. App. 131, 776 P.2d 1001 (1989) (stipulation in deferred

prosecution agreement to admissibility of police report and waiving procedural or legal

defenses treated as valid and binding); *State v. Melick*, 131 Wn. App. 835, 129 P.3d 816

(2006) (stipulation in drug court agreement to information contained in police and

laboratory reports and waiving right to call and cross-examine witnesses treated as valid and binding); *State v. Drum*, 143 Wn. App. 608, 617, 181 P.3d 18 (2008), *aff'd on other grounds*, 168 Wn.2d 23, 225 P.3d 237 (2010) (stipulation in drug court agreement that trial court would determine guilt based solely on the police report and that evidence in the report was sufficient to support a finding of guilt treated as valid and binding).  C*f. State v. Humphries*, 181 Wn.2d 708, 715, 336 P.3d 1121 (2014) (a defendant can stipulate to "crucial facts" and is presumed to consent to stipulations by his lawyer unless he expressly objects).

The only basis for avoiding such stipulations that is recognized by these cases is where the stipulation is equivalent to a guilty plea and is not voluntary and knowing, thereby violating due process.  *See, e.g.*, *In re Det. of Moore*, 167 Wn.2d 113, 120-21, 216 P.3d 1015 (2009) (citing *Johnson*, 104 Wn.2d 338).  Mr. Granados, who told the district court that his entry into the felony diversion agreement *was* knowing and voluntary, has not raised a due process challenge in this petition.

Mr. Granados has not identified any case that holds that a criminal defendant, represented by counsel, cannot validly stipulate to the admissibility of the defendant's confession unless the State offers corroborating evidence.  He cites *State v. Colquitt*, 133 Wn. App. 789, 137 P.3d 892 (2006), but that case hurts rather than helps him.  The court in *Colquitt* found the defendant's waivers and stipulations in a drug court agreement were binding but were quite limited.  Critically, Mr. Colquitt did not stipulate to possessing a

controlled substance. If he had (as Mr. Granados did in this case) it is clear the appellate court would have found the stipulation to be valid and the evidence sufficient to convict.

Together, Mr. Granados's admissible confession and Officer Brewster's testimony are substantial evidence supporting the trial court's finding of guilt.[2]

### 2. Unwitting Jury Trial Waiver

As Mr. Granados contends, nothing in the record shows that he waived his right to a jury trial. No written waiver was filed under CrR 6.1(a). The State now concedes that while it and defense attorney Stilwill believed at the time of trial that Mr. Granados had waived his right to trial by jury as part of the felony diversion paperwork, the forms used in Mr. Granados's case did not in fact include a waiver of that right.[3]

---

[2] We believe ours is the simplest analysis of the issue: a criminal defendant can validly stipulate to the admissibility of his confession and if he does, no analysis of corpus delicti or any other forgone objection is required. We point out, however, that courts that have proceeded to analyze the corpus delicti issue have found that there can be "judicial confessions" to which the corpus delicti rule does not apply. *See Commwealth v. McCabe*, 345 Pa. Super. 495, 499-500, 498 A.2d 933 (1985) (independent evidence of a corpus delicti has no application to judicial admissions that are deliberately made under oath during formal proceedings and are generally free from the inherent infirmity of verbal confessions made out of court) (citing *State v. Schomaker*, 303 N.W.2d 129 (Iowa 1981); *Commwealth v. Granese*, 37 Montg. Cty. L. Rep. 15 (Pa. 1920); 30 Am. Jur. 2d *Evidence* § 1139).

[3] The federal and state constitutions both guarantee a criminal defendant the right to a jury trial. U.S. CONST. amend VI; CONST. art. I, § 21; *see Pasco v. Mace*, 98 Wn.2d 87, 653 P.2d 618 (1982). A criminal defendant may waive the constitutional right to a jury trial if the waiver is knowing, voluntary and intelligent. *State v. Stegall*, 124 Wn.2d 719, 724-25, 881 P.2d 979 (1994); *City of Bellevue v. Acrey*, 103 Wn.2d 203, 207, 691 P.2d 957 (1984). The record must contain the defendant's personal expression of waiver, either in writing or orally on the record. *State v. Wicke*, 91 Wn.2d 638, 645-46, 591 P.2d

Despite the error, the State argues that Mr. Stilwell agreed to a bench trial and Mr. Granados's informed acquiescence in that agreement is demonstrated by the record. Alternatively, it argues that Mr. Granados fails to meet his burden on collateral review of demonstrating actual and substantial prejudice. Mr. Granados denies any acquiescence[4] and contends that deprivation of the right to jury trial is structural error, from which prejudice is presumed. We first address whether an invalid jury waiver is structural error and then turn to whether it is per se prejudicial on collateral review.

---

452 (1979); *State v. Treat*, 109 Wn. App. 419, 427-28, 35 P.3d 1192 (2001). Counsel's waiver on the defendant's behalf is insufficient. *State v. Hos*, 154 Wn. App. 238, 250, 225 P.3d 389 (2010) (citing *Wicke*, 91 Wn.2d at 644). And failure to demand a jury trial is not sufficient to meet constitutional waiver requirements. *Acrey*, 103 Wn.2d at 208. The State bears the burden of establishing the validity of the defendant's jury trial waiver, and "every reasonable presumption should be indulged against the waiver . . . absent an adequate record to the contrary." *Wicke*, 91 Wn.2d at 645; *see also Stegall*, 124 Wn.2d at 730. Whether a waiver is valid is an issue of law that we review de novo. *Treat*, 109 Wn. App. at 427.

[4] *State v. Cham*, on which the State relies in arguing informed acquiescence, involved a defense lawyer's report to the court, twice, that her client wanted to waive his right to a jury trial. 165 Wn. App. 438, 449, 267 P.3d 528 (2011), *modified on remand*, 175 Wn.2d 1022 (2012). Cham was present for one of those representations and during a colloquy with the court on another matter Cham demonstrated his knowledge of the function and role of the jury. In addition, Cham had invoked his right to a jury trial on the underlying charges twice before agreeing to a bench trial. The court concluded that the specific facts of Cham's case overcame any presumption that he did not make a knowing, intelligent, and voluntary waiver.

Most of the facts that were material in *Cham* are absent in this case. Because we find that Mr. Granados was required to allege and demonstrate actual prejudice and has failed to do so, we need not consider the State's argument of informed acquiescence further.

*Error Generally*

"'[M]ost constitutional errors can be harmless.'" *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)). "'[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.'" *Id.* (alterations in original) (quoting *Rose v. Clark*, 478 U.S. 570, 579, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986)). In *Fulminante*, the Court stated that some constitutional rights are so basic to a fair trial that the violation of those rights requires an automatic reversal and is not subject to harmless error analysis. The Court explained that constitutional error essentially falls within two different categories: 1) trial errors "which [occur] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether [their] admission was harmless beyond a reasonable doubt"; and 2) structural defects that affect "the framework within which the trial proceeds, rather than simply an error in the trial process itself" and thus are so inherently unfair that they are not subject to harmless error analysis. 499 U.S. at 307-08, 310.

Most recently, the Supreme Court has suggested "[t]here appear to be at least three broad rationales" for deeming error to be structural: (1) where the right at issue is not designed to protect a defendant from erroneous conviction but protects some other

interest, (2) where the effects of the error are simply too hard to measure, or (3) where the

error always results in fundamental unfairness. *Weaver v. Massachusetts*, ___ U.S. ___,

137 S. Ct. 1899, 1908, 198 L. Ed. 2d 420 (2017). "Despite its name, the term 'structural

error' carries with it no talismanic significance as a doctrinal matter. It means only that

the government is not entitled to deprive the defendant of a new trial by showing that the

error was harmless beyond a reasonable doubt." *Id.* at 1910 (internal quotation marks

omitted).

An invalid waiver of the right to a jury trial has not been identified by the United

States Supreme Court as a structural error,[5] nor have the justices of the Washington State

Supreme Court identified it as such. *See In re Pers. Restraint of Stockwell*, 179 Wn.2d

588, 608, 316 P.3d 1007 (2014) (McCloud, J., concurring); *In re Khan*, 184 Wn.2d 679,

---

[5] Examples of errors deemed structural defects by the United States Supreme Court include: (1) complete lack of counsel (*Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963)); (2) judicial bias (*Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927)); (3) racial discrimination in the selection of a grand jury (*Vasquez v. Hillery*, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986)); (4) denial of self-representation at trial (*McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984)); (5) denial of a public trial (*Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984)); (6) defective reasonable doubt instruction depriving defendant of right to jury trial (*Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993)); and (7) deprivation of right to counsel of choice (*United States v. Gonzalez-Lopez*, 548 U.S. 140, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006)). While not labeling the error structural, the United States Supreme Court has also granted automatic relief to defendants who prevailed on claims of race or gender discrimination in jury selection. *Batson v. Kentucky*, 476 U.S. 79, 100, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 145-46, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994).

691-92, 363 P.3d 577 (2015) (plurality opinion), *and see Khan*, 184 Wn.2d at 695-96

(Yu, J., concurring). While not calling it "structural error," however, the Supreme Court

has held that a voluntary waiver of the right to jury trial cannot be inferred from a silent

record, and when the record of a criminal conviction obtained by guilty plea contains no

evidence that a defendant knew of that right and others he was putatively waiving, the

conviction must be reversed. *United States v. Dominguez Benitez*, 542 U.S. 74, 84 n.10,

124 S. Ct. 2333, 159 L. Ed. 2d 157 (2004) (citing *Boykin v. Alabama*, 395 U.S. 238, 243,

89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)); *State v. Wicke*, 91 Wn.2d 638, 645, 591 P.2d

452 (1979).

Mr. Granados asks us to find that an unwitting jury waiver is structural error,

relying for support on direct appeal cases from the Ninth Circuit that have found an

invalid waiver of the right to jury trial to be structural because it defies harmless error

analysis. He emphasizes one case, *United States v. Duarte-Higareda*, 113 F.3d 1000,

1003 (9th Cir. 1997), which, like this court's decision in *State v. Vreen*, 99 Wn. App. 662,

670-71, 994 P.2d 905 (2000), *aff'd*, 143 Wn.2d 923, 26 P.3d 236 (2001), relied on the

reasoning of *United States v. Annigoni*, 96 F.3d 1132 (9th Cir. 1996)[6], a *Batson*[7] case.

---

[6] *Overruled by Rivera v. Illinois*, 556 U.S. 148, 129 S. Ct. 1446, 173 L. Ed. 2d 320 (2009), *as recognized in United States v. Lindsey*, 634 F.3d 541, 544 (9th Cir. 2011).
[7] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

*Annigoni* held that automatic reversal was the remedy for erroneous outright denial of the right to a preemptory challenge because it would be "difficult if not impossible for a reviewing court to determine the degree of harm resulting" from the error. 96 F.3d at 1145. The court reasoned that trying to assess the harm would require an appellate court to "reconstruct what went on in jury deliberations through nothing more than post-trial hearings and sheer speculation." *Id.* Mr. Granados suggests that the error in his case would require us to speculate about how he would have fared before a jury.

But another federal appellate court, in a decision cited by the State, has held that the correct and feasible way to measure the effect of an invalid jury trial waiver is to look at whether a defendant would have waived trial by jury if fully informed. *United States v. Williams*, 559 F.3d 607, 614 (7th Cir. 2009). C*f. Dominguez Benitez*, 542 U.S. at 76, (rule-based case in which a defendant, to show plain error, was "obliged to show a reasonable probability that, but for the error, he would not have entered [a guilty] plea," not how he would have fared in a hypothetical trial); *accord Lee v. United States*, ___ U.S. ___, 137 S. Ct. 1958, 1967, 198 L. Ed. 2d 476 (2017). The State argues that Mr. Granados has not shown and likely could not show that he would have wanted a jury trial, since trying stipulated fact trials to the bench is the norm. Applying *Williams*'s reasoning, it should be possible to assess the likelihood that Mr. Granados would have exercised his jury right had he been properly informed of it. *But cf. Stockwell*, 179

18

Wn.2d at 602 ("[A] hindsight review of defendant's motivations[ ] is distinct from consideration of actual and substantial prejudice, which looks to the practical effects of a sentence.").

Nevertheless, we can decide Mr. Granados's petition without reaching the difficult issue of whether his unwitting jury trial waiver would have been structural error on appeal. We decline his request to resolve that issue.

*Is an unwitting jury waiver per se prejudicial on collateral review?*

Mr. Granados's petition does not contend that if informed of his right to a jury trial, he would have exercised it.[8] He does not demonstrate any particular way in which the constitutional error of not obtaining a voluntary and intelligent waiver of his jury trial right worked to his actual and substantial prejudice.[9] The dispositive question then, is

---

[8] Mr. Granados, who has been represented by counsel throughout this collateral proceeding, supplies no personal declaration with his petition and also does not request a reference hearing. Perhaps he cannot truthfully state that he would have demanded a jury trial. Nor does he claim ineffective assistance of trial counsel.

[9] In supplemental briefing, Mr. Granados argues for the first time that by invalidly waiving his right to a jury trial he gave up a number of trial rights, including the right to contest the State's evidence, make suppression motions, confront State witnesses, and submit his own evidence. He contends the denial of his jury trial right was therefore inherently prejudicial. Pet'r's Supp. Br. at 5.

These arguments ignore his stipulation that he possessed methamphetamine, obviating any motion to suppress the evidence (a right he also waived in the felony diversion agreement). He had the opportunity to cross-examine Officer Brewster and the court asked if he wished to present any further defense, but counsel declined on both accounts.

whether he is required to make that showing or is, instead, entitled to the presumption of prejudice he perhaps would have enjoyed on direct appeal.

In *In re Personal Restraint of St. Pierre*, 118 Wn.2d 321, 328, 823 P.2d 492 (1992), our Supreme Court rejected the proposition that a constitutional error that is never considered harmless on direct appeal will also be presumed prejudicial for the purposes of PRPs, explaining, "A personal restraint petition is not to operate as a substitute for a direct appeal." The availability of collateral relief is limited "because it undermines the principles of finality of litigation, degrades the prominence of trial, and sometimes deprives society of the right to punish admitted offenders." *Id.* at 329 (citing *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 824, 650 P.2d 1103 (1982)).[10]

In adhering to this finality principle in later cases, members of the court have provided several formulations of the burden borne by a petitioner who contends that what the court has termed a "conclusive presumption of prejudice" remains present on

---

[10] In *St. Pierre*, the court found no per se prejudice from a defective charging document. Examples of errors the Washington Supreme Court has found per se prejudicial, although not labeled as "structural error," include double jeopardy violations (*In re Pers. Restraint of Moi*, 184 Wn.2d 575, 579, 360 P.3d 811 (2015), *cert. denied*, ___ U.S. ___, 137 S. Ct. 566, 196 L. Ed. 2d 456 (2016)); *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 820-22, 100 P.3d 291 (2004)); failure to require the State to prove its case beyond a reasonable doubt (*In re Pers. Restraint of Gunter*, 102 Wn.2d 769, 774, 689 P.2d 1074 (1984)); and conflict of interest resulting in deprivation of counsel (*In re Pers. Restraint of Richardson*, 100 Wn.2d 669, 679, 675 P.2d 209 (1983), *overruled on other grounds by State v. Dhaliwal*, 150 Wn.2d 559, 568, 79 P.3d 432 (2003)).

collateral review. *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 120, 340 P.3d 810 (2014). In *Coggin*, a public trial right violation was not presumed prejudicial on collateral review. The lead opinion limited conclusive presumptions to situations where, "in light of the essential purpose of the constitutional right at issue, a violation of the right would necessarily prejudice the defendant." *Id.* (citing *In re Pers. Restraint of Morris*, 176 Wn.2d 157, 181-82, 288 P.3d 1140 (2012) (Wiggins, J., dissenting)). Elsewhere, it explained that unlike the appellate process, which exists in part to develop the body of law governing all cases, "collateral review focuses on the facts of the individual defendant, and its purpose is to correct the most egregious errors that cause actual harm." *Id.* at 122. The concurring opinion in *Coggin* described a conclusive presumption as applying only where a petitioner "can demonstrate that the error in his case 'infect[ed] the entire trial process' and deprive[d] the defendant of 'basic protections,' without which 'no criminal punishment may be regarded as fundamentally fair.'" *Id.* at 123 (Madsen, C.J., concurring) (first alteration in original) (internal quotation marks omitted) (quoting *Neder*, 527 U.S. at 8-9).

Mr. Granados distinguishes *Coggin* on the basis the public trial right is not absolute because courtroom closure can be justified under the factors in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995), whereas the right to a jury trial is absolute. Pet'r's Supp. Br. at 4 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 281-82, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993)). He claims to show that in light of the essential purpose

of the jury trial right, a violation would *necessarily* prejudice him. Yet at the same time, and inconsistently, he reverts to his "structural error" argument that a jury waiver by an uninformed defendant has "consequences that are necessarily unquantifiable and indeterminate," again citing *Sullivan*, 508 U.S. at 282. He points to the admonition in *Rose v. Clark* that when the right to a jury trial in a serious criminal case is altogether denied, "the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; *the error in such a case is that the wrong entity judged the defendant guilty*." 478 U.S. at 578 (emphasis added). Yet even if Mr. Granados presented evidence and established that he would have elected a jury trial, the fact that the judge who found him guilty was the "wrong entity" would not show that Mr. Granados was "necessarily prejudiced," or "actually harmed," or "deprived of a protection without which his sentence cannot be regarded as fundamentally fair."

Mr. Granados had counsel and was tried by an impartial adjudicator. Under *Coggin*'s several formulations of his burden to show conclusive prejudice, his evidence and argument falls short. The actual and substantial prejudice standard applies.

Mr. Granados does not carry his threshold evidentiary burden as required under *Rice*, and he ultimately does not show actual and substantial prejudice under *Cook*.

### 3. Deprivation of Right to an Interpreter

Finally, Mr. Granados argues that he was denied his right to an interpreter in those instances where Mr. Trejo translated the felony diversion paperwork for him. A criminal

defendant has a statutory and constitutional right to an interpreter throughout the proceedings if one is needed. *In re Pers. Restraint of Khan*, 184 Wn.2d at 689 (lead opinion) (citing RCW 2.43.010, .030, .040(2); *State v. Gonzales-Morales*, 138 Wn.2d 374, 379, 979 P.2d 826 (1999)). "The purpose of [the statutory procedures at] RCW 2.43 is to uphold the constitutional rights of non-English speaking persons." *State v. Acquino-Cervantes*, 88 Wn. App. 699, 706, 945 P.2d 767 (1997). In Washington, a criminal defendant's right to an interpreter is based on the Sixth Amendment right to confront witnesses and "'the right inherent in a fair trial to be present at one's own trial.'" *Gonzales-Morales*, 138 Wn.2d at 379 (quoting *State v. Woo Won Choi*, 55 Wn. App. 895, 901, 781 P.2d 505 (1989)).

The policy of the State as identified in chapter 2.43 RCW is to provide for the use of interpreters so as to "secure the rights, constitutional or otherwise" of non-English speakers who "cannot be fully protected in legal proceedings unless qualified interpreters are available to assist them." RCW 2.43.010. Under RCW 2.43.030, when an interpreter is appointed, unless there is a written waiver by the non-English speaking person, "a certified or qualified interpreter [is] to assist the person throughout the [legal] proceedings." RCW 2.43.030(1). If good cause is found for using a noncertified interpreter or if a qualified interpreter is appointed, the appointing authority must make

certain findings that the proposed interpreter is able to interpret accurately all communications to and from that person in that particular proceeding. RCW 2.43.030(2).

All language interpreters are required to take a statutory oath and "abide by a code of ethics established by supreme court rule." RCW 2.43.080. The code of ethics is found in General Rule (GR) 11.2. Among other provisions, the code of conduct provides that language interpreters "shall not give legal advice" and shall not serve in any matter in which the interpreter "has an interest . . . in the outcome" or "has participated in the choice of counsel." GR 11.2(g), (d).

The appointment of an interpreter is a matter within the discretion of the trial court, reviewable only for abuse of that discretion. *Gonzales-Morales*, 138 Wn.2d at 381. Under this standard of review, appellate courts have typically upheld trial court decisions concerning the use of interpreters. *Id.* and n.27 (citing cases).

The Washington Supreme Court has thus far decided that the decision not to provide an interpreter is not a structural error mandating a reversal without a showing of prejudice. *Khan*, 184 Wn.2d at 691 (lead opinion), 695-96 (Yu, J., concurring). In a concurring opinion to the four-justice lead opinion, Justice Yu states that as jurisprudence continues to evolve, "[t]here may come a time where we hold that the lack of a language interpreter in a criminal proceeding constitutes such an error." *Id.* at 695.

In a personal declaration submitted with the State's response to the petition, Mr. Trejo states that he grew up in a bilingual Spanish/English environment and has spoken

both languages his entire life. He uses Spanish on a daily basis and no Spanish speaking person has ever told him they do not understand him. He has represented over 1,000 clients who were monolingual in the Spanish language and not a single client has alleged they did not understand his Spanish. He states that he and Mr. Granados always communicated with one another in the Spanish language, and at no time did Granados question his Spanish speaking ability or express that he did not understand his Spanish.

Mr. Granados provides no evidence to the contrary in this petition. Instead, he relies on *United States v. Bailon-Santana*, 429 F.3d 1258 (9th Cir. 2005), in which two members of the three-judge panel reversed a conviction because the district court accepted an English language jury waiver from a monolingual Spanish-speaking defendant based on defense counsel's representation that he had translated the waiver for his client. The opinion holds that the court should have inquired of the defendant directly, through a certified or court-appointed interpreter, because a defense lawyer may not be a reliable judge of his or her own fluency.

For several reasons, *Bailon-Santana* is not persuasive in this collateral attack. First, the opinion implies that under federal statutes the lawyer could have been certified or found qualified to interpret but failed to do so. By contrast, Mr. Trejo would not be able to qualify as a language translator under chapter 2.43 RCW, since his representation of Mr. Granados disqualifies him under the code of ethics. RCW 2.43.080; GR 11.2(d), (g). Unlike under federal law, if a criminal defense lawyer in Washington is a competent

25

translator for some purposes, it appears the analysis under chapter 2.43 RCW would be to determine that *no certified or court-appointed translator is needed for those purposes*— not to require the lawyer to obtain certification or court appointment as an interpreter.

Second, the record contains more than Mr. Trejo's self-certification. At the hearing at which the district court accepted Mr. Granados's application for felony diversion, Mr. Granados heard Mr. Trejo (through the court interpreter) tell the district court that he and Mr. Granados had reviewed the application and Mr. Granados understood it. At the hearing at which the district court accepted the felony diversion agreement, Mr. Granados himself told the court, through the court interpreter, that his entry in the felony diversion program was knowing, voluntary and intelligent.

Third, and most importantly, *Bailon-Santana* was a direct appeal to which the heightened showing required for collateral review did not apply.

Since the only evidence is that Mr. Granados knowingly, voluntarily and intelligently entered the felony diversion program, there is no constitutional violation and hence no actual and substantial prejudice under *Cook*. If and to the extent that the district court erred by not applying chapter 2.43 RCW and complying with its requirements, Mr. Granados shows no fundamental defect that inherently results in a complete miscarriage of justice under the *Cook* standard.

No. 33866-5-III
*In re Pers. Restraint of Granados*

The petition is dismissed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Korsmo, J.

Pennell, J.